■ In the Matter of E. Leo Milonas, as Chief Administrative Judge of the Courts of the Unified Court System of the State of New York, et al., Petitioners, v Margarita Rosa, as Commissioner of the New York State Division of Human Rights, et al., Respondents. [629 NYS2d 535] —Per Curiam Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Human Rights which, *inter alia*, found that petitioners unlawfully terminated the employment of respondent Matilda Garner.

Respondent Matilda Garner was employed by petitioner Office of Court Administration (hereinafter OCA) and in April 1980 was appointed to the position of Senior Court Analyst as an Equal Employment Opportunity (hereinafter EEO) representative for the Fourth Judicial Department. In October 1983, Adrianne White was appointed as Garner's supervisor. Thereafter, Garner and White, who are both black females, experienced numerous problems in their work relationship which resulted in Garner filing two grievances (both of which were denied), and culminated in Garner's filing a discrimination complaint with respondent State Division of Human Rights (hereinafter the Division), in July 1984 as a result of White's alleged discriminatory actions against her. (This complaint was subsequently dismissed in November 1985.)

In January 1985, Garner was discharged from her employment and she filed a second discrimination complaint with the Division, which is the basis for the present proceeding. A hearing was conducted before an Administrative Law Judge (hereinafter ALJ), who rendered a decision finding that OCA had terminated Garner in retaliation for her filing the discrimination complaint in July 1984 and recommended that she receive compensatory damages in the amount of $150,000, together with back pay. This determination was reviewed by respondent Commissioner of Human Rights (hereinafter the Commissioner) who adopted the ALJ's finding and recommendations with minor modifications. Petitioners then brought this proceeding pursuant to Executive Law § 298 to annul the Commissioner's determination and the matter has been transferred to this Court for review.

In order to prevail in a proceeding such as this, a complainant must show that he or she is a member of a protected class, who was qualified for the position and was discharged from said position under circumstances giving rise to an inference of unlawful discrimination. Once a prima facie case has been

made, the responding party must present evidence articulating a legitimate, independent and nondiscriminatory reason for its action and, if this is done, the complainant, upon whom the burden of proof remains at all times, must show by a preponderance of the evidence that the reasons are merely a pretext (*see, Matter of Miller Brewing Co. v State Div. of Human Rights,* 66 NY2d 937, 938; *Matter of New York State Off. of Mental Health v New York State Div. of Human Rights,* 210 AD2d 686, 687; *Sogg v American Airlines,* 193 AD2d 153, 156, *lv dismissed* 83 NY2d 846, *lv denied* 83 NY2d 754). Where, as in this case, the crux of the complaint is that the termination was in retaliation for having filed a discrimination complaint, the complainant must further adduce evidence of "a subjective retaliatory motive for the termination" (*Matter of Pace Univ. v New York City Commn. on Human Rights,* 85 NY2d 125, 128).

The record indicates that in 1980, then-Deputy Chief Administrative Judge Robert Sise of OCA was instrumental in establishing an EEO office in Buffalo, of which Garner was the local coordinator. This was essentially a one-person office designed to serve the Fourth Judicial Department for the express purpose of reaching out into the Fifth, Seventh and Eighth Judicial Districts which comprise the Fourth Department. At that time, Sise notified the Administrative Judges in the Department of their responsibilities to work with the EEO office, which had the authority to affirmatively recruit minority members for employment in the Unified Court System, and he further set forth a number of steps to facilitate the recruitment and selection of women and minority groups.

Garner testified that prior to the time when White became her supervisor, she had experienced no problems or difficulties with her job, but that during White's tenure as her supervisor she was repeatedly harassed and criticized about her job performance. In contrast, White testified as to a number of serious problems with Garner's work, including her failure to complete work assignments in a timely manner, such as biweekly reports, failure to collect and submit EEO logs and interview summary sheets which were required under Federal mandates, failure to conduct community outreach and failure to communicate with or meet with court administrators and other personnel. The record also discloses a failure by Garner to follow the directions of her supervisor and an additional problem regarding a discrimination complaint arising in the Buffalo area in which Garner was uncooperative with White and the OCA legal staff and berated White for asking her questions about the case. There was testimony from the executive as-

sistants in the Fifth, Seventh and Eighth Judicial Districts, who are primarily responsible for the day-to-day operations in their districts, indicating that Garner failed to communicate with them, did not travel to the various districts to generate recruitment in these areas and failed to work with court personnel in relation to hiring available applicants. There was further testimony that when Garner did respond to job announcements, it was usually after the expiration dates and sometimes not until the nomination process had been completed, and thus Garner failed to perform the outreach functions in western New York which was the purpose of the EEO office in Buffalo.

Michael Nadel, at the time Deputy Chief Administrator of OCA and White's supervisor, was informed by White of her continuing problems with Garner and, at the request of Sise, who was then Chief Administrative Judge, met with Garner on June 13, 1984. Sise, who was aware of these difficulties through conversations with White, Nadel and the executive assistants, had asked Nadel to meet with Garner in an attempt to resolve them. According to Nadel, this meeting did not go well and at one point Nadel advised Garner that unless matters improved, Garner's position with the court system was in jeopardy. We further note that in May 1984, well before the filing of the complaint in question, OCA's attorneys had prepared a memorandum regarding the possible termination of Garner. The record also indicates that shortly after her meeting with Nadel, Garner was out of work from July to October 1984 as a result of alleged medical problems and during this time White was unable to contact her by mail or telephone. Garner returned to work on a part-time basis in October 1984 without advising White, resulting in another disagreement concerning White's reluctance to sign Garner's time card without a satisfactory medical excuse, which Sise resolved by directing White to sign Garner's time card so that she would be paid.

Sise testified that as a result of the difficulties and problems with Garner's work, including her failure to reach out to approximately two thirds of her district and her unwillingness to take directions from her supervisor, he had decided to terminate Garner's employment in November 1984. However, he delayed any action because of the ensuing holidays and Garner was formally notified of her termination in January 1985.

The ALJ found that Sise discriminated against Garner by treating her differently than other members of the EEO office staff because Garner had filed a discrimination complaint and

that Sise took advantage of the conflict between Garner and White to remove an employee "whom he believed had the temerity to file a human rights complaint against [OCA]". The ALJ further found that Sise's failure to use his position as Chief Administrative Judge to resolve the difficulties between Garner and White was attributable to Sise's "pique and annoyance" with Garner because she had filed a human rights complaint.

The Commissioner accepted the ALJ's finding that Sise used the friction between Garner and White as an excuse to justify Garner's termination because she had previously filed a complaint with the Division charging OCA with discrimination, and that the employer's explanation was unworthy of credence since the reasons articulated by Sise were merely a subterfuge for unlawful retaliation.

Although the record amply demonstrates the tension between Garner and White and the deterioration of their working relationship, and the concerns of Sise regarding the lack of outreach from the Buffalo office during Garner's tenure, it is devoid of evidence to support the Commissioner's finding that Garner was terminated in retaliation for having filed the discrimination complaint in July 1984. As we have stated in *Matter of New York State Off. of Mental Retardation & Dev. Disabilities v New York State Div. of Human Rights* (183 AD2d 943, 944), judicial review must be more than a rubber stamp of agency orders, and a court reviewing the question of substantial evidence must exercise a genuine judicial function and not merely confirm an agency determination because it was made by the agency (*see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 181). The burden is on the complainant to prove by substantial evidence the claim for unlawful discrimination, and where the Commissioner's determination lacks a rational basis and is not supported by substantial evidence, it cannot stand (*see, Matter of New York State Div. of Human Rights v Colucci*, 199 AD2d 268; *Syracuse Community Health Ctr.v Wendi A. M.*, 198 AD2d 830, *lv granted* 83 NY2d 752; *Matter of Rotterdam-Mohanasen Cent. School Dist. v State Div. of Human Rights*, 70 AD2d 727, *affd* 49 NY2d 744).

In this case, the record is replete with testimony that Garner was not doing the job she was designated to perform and there is insufficient evidence of a subjective retaliatory motive for her discharge to establish a prima facie case. However, even if a prima facie case of retaliation could be found, there is ample proof of legitimate, independent and nondiscriminatory reasons

for Garner's dismissal (*see, Matter of Pace Univ. v New York City Commn. on Human Rights*, 85 NY2d 125, 129, *supra*; *Matter of Conklin v City of Newburgh*, 205 AD2d 841, 842).

Therefore, upon a review of the entire record, we find a lack of substantial evidence to support respondents' contentions that the discharge of Garner in January 1985 was in retaliation for filing the July 1984 complaint with the Division. Accordingly, the Commissioner's determination is annulled, the petition granted and the complaint dismissed.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and complaint dismissed.