■ In the Matter of Town of Lumberland, Petitioner, v New York State Division of Human Rights et al., Respondents. [644 NYS2d 864] —Spain, J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Sullivan County) to review a determination of respondent State Division of Human Rights which found petitioner guilty of an unlawful discriminatory practice relating to employment.

In 1984 respondent Anne Golembiowsky was appointed by petitioner to the part-time position of Constable subject to reappointment in January of each year. Petitioner's constabulary force is managed by the Town Supervisor, the Constabulary Liaison (who is appointed by the Town Board and who acts as the administrator of the constabulary force) and the Chief Constable.[1] Golembiowsky was subsequently reappointed as Constable in 1985, 1986 and 1987. In 1986 Charles O'Neill was also appointed by petitioner as a Constable. Thereafter, O'Neill openly refused to patrol with Golembiowsky as his

---

1. Petitioner's constabulary policies and procedures, as enacted May 31, 1988, state that a constable may be reappointed by the Town Board "upon a satisfactory recommendation from the Chief Constable and the Constabulary Liaison".

partner because she was a female; according to Golembiowsky, who was the only female on the constabulary, O'Neill told her that he was afraid she would rape him. O'Neill also told Golembiowsky and other Constables that he did not appreciate having a female Constable on the force and that he did not believe that a woman should be working in that capacity.

In 1987 O'Neill became Chief Constable and, as such, became Golembiowsky's supervisor. He continued to make sexual remarks to Golembiowsky and about her to other Constables such as, "How's your girlfriend?", "Did you get any tonight?", and "What did you do when you parked?"[2] On one occasion O'Neill made a remark to Golembiowsky, in front of a group of firefighters, to the effect of "[l]ook at those hips, swing it baby" and "with the gun on my hip you tend to roll a little"; O'Neill also accused Golembiowsky of having affairs with other Constables. Such remarks made Golembiowsky "very uncomfortable" and she found O'Neill to be "very intimidating". After telling O'Neill that she found his behavior offensive and lodging oral complaints with the Town Supervisor, Golembiowsky submitted a letter of complaint regarding O'Neill to the Town Board in March 1987. The Constabulary Liaison at the time testified that he felt that the problems were a "personality clash" which did not affect petitioner or the constabulary and therefore he "did nothing".

In April 1987, after being told by the Town Supervisor that she should ignore O'Neill's remarks, Golembiowsky filed a complaint with respondent State Division of Human Rights. The complaint alleged that O'Neill had been making derogatory remarks regarding Golembiowsky's personal life and her family and that he refused to patrol with her. In May 1987 the Town Supervisor received three letters of complaint regarding Golembiowsky's behavior at a court appearance to prosecute a ticket which she had issued. Shortly thereafter, the Constabulary Liaison, citing vagueness and misrepresentations in a report which Golembiowsky had written regarding the matter, relieved Golembiowsky of her duties as a Constable and submitted a report to the Town Board explaining his reasons for doing so. The report also referenced Golembiowsky's failure to qualify with the shotgun in 1986 and an alleged misrepresentation as to the reason why she had failed to qualify. Within the week a Town Board meeting was held to review the report and Golembiowsky's suspension was revoked; no disciplinary action was taken against her.

---

2. Notably, O'Neill, who no longer lives in the Town of Lumberland, did not testify at the hearing.

In June 1987, during a meeting at which Golembiowsky, O'Neill and Town Board members were present, Golembiowsky was told that if she did not withdraw the pending complaint she would be fired. At the same meeting, O'Neill was told, and agreed, to stop making derogatory remarks toward Golembiowsky, to start patrolling with her and to treat her as an equal. Also in June 1987, the Town Supervisor spoke with, and wrote a letter to, Golembiowsky stressing the importance of accurately completing traffic and parking tickets. Subsequently, in August 1987, Golembiowsky withdrew the complaint which she had filed against O'Neill with the Division. O'Neill's conduct persisted, however, and Golembiowsky had at least one meeting with the Town Supervisor regarding such conduct subsequent to her withdrawal of the complaint. In January 1988 Golembiowsky was reappointed to her position as Constable. The Town Supervisor received a verbal complaint, in September 1988, that Golembiowsky had made an unsafe turn in front of opposing traffic and, in October 1988, he received a letter of complaint from a citizen who claimed he had been detained by Golembiowsky in excess of $2^1/2$ hours. Contrary to recently instituted procedure, no investigations of these complaints were ever conducted.

Prior to the January 1989 Town Board meeting at which the vote for Constable reappointments was made, the Town Supervisor met individually with various Board members to discuss complaints which had been lodged against Golembiowsky and whether to reappoint her. Thereafter, Golembiowsky was the only Constable not reappointed and her position was filled by a male, with the Town Board passing over another female applicant. Upon inquiry as to why she had not been reappointed, the Town Supervisor told Golembiowsky that she had too many complaints in her file.

In April 1989 Golembiowsky filed a new complaint with the Division. After an administrative hearing an Administrative Law Judge (hereinafter ALJ) recommended, *inter alia*, that Golembiowsky be awarded $250,000 as compensatory damages for the mental anguish and humiliation she suffered as a result of petitioner's sexual harassment, retaliation discrimination and sex discrimination. In March 1995 the Division's Commissioner essentially adopted the ALJ's findings but reduced the award of compensatory damages to $150,000. Pursuant to Executive Law § 298, petitioner commenced this proceeding and, subsequent to the addition of the Division as a party, the proceeding was transferred to this Court.

Initially we reject petitioner's contention that the ALJ

abused her discretion in permitting Golembiowsky to amend the complaint to include a claim for sexual discrimination. The complaint which Golembiowsky filed stated that she was the only woman on the constabulary force and that she had been denied equal employment "terms, conditions and privileges"; the complaint also made specific reference to the April 1987 complaint in which Golembiowsky charged O'Neill with sexual harassment. At the outset of the hearing, Golembiowsky moved to amend the complaint to include a charge of sexual discrimination and almost two months elapsed between the beginning and end of the hearing. CPLR 3025 (c) states that "[t]he court may permit pleadings to be amended *before or after judgment* to conform them to the evidence, upon such terms as may be just" (emphasis supplied). The rationale behind such provision is that "[i]f there is nothing in the nature of the amendment as to which [the nonmoving party] can claim prejudice, the proof at trial should be given the upper hand and defects in pleading either overlooked or conformed to the proof adduced" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3025:15, at 364). In our view, petitioner had adequate notice of Golembiowsky's intention to present evidence regarding sexual discrimination and ample time to conduct an investigation of these allegations so as to properly defend itself.

We move next to petitioner's assertion that the one-year filing requirement is a complete bar to the relief granted to Golembiowsky (*see*, Executive Law § 297 [5]; *see also*, 9 NYCRR 465.3 [e]) and reject petitioner's assertion that the continuing violation exception is not applicable. Petitioner's argument that the appropriate test is whether the alleged discriminatory practice had a continuing economic impact on the complainant is unavailing (*see, e.g., Tiffany & Co. v Smith*, 224 AD2d 332; *State Div. of Human Rights v Burroughs Corp.*, 73 AD2d 801, *affd* 52 NY2d 748), especially in light of this Court's holding that a complaint alleging a " 'climate of sex discrimination' " was sufficiently broad to encompass discriminatory acts of a continuing nature and were, therefore, not time barred despite the complainant's filing of the complaint more than one year after being given notice of her termination (*Matter of Horn v New York State Human Rights Appeal Bd.*, 75 AD2d 978). O'Neill's verbal harassment and his consistent refusal to patrol with Golembiowsky up until the time at which she was not reappointed had a continuing impact on her work environment and the performance of her employment duties and should therefore be classified as discriminatory acts of a continuing nature (*see, supra*, at 979). Accordingly, all of O'Neill's actions were properly considered in the evaluation of Golembiowsky's complaint (*see*, 9 NYCRR 465.3 [e]).

We also reject petitioner's assertion that the Commissioner's findings are not supported by substantial evidence (*see, Matter of Consolidated Edison Co. v New York State Div. of Human Rights*, 77 NY2d 411, 417; *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 179-180). In our view the determination that petitioner engaged in retaliation and sexual discrimination has a rational basis and is supported by substantial evidence and should therefore be confirmed. Golembiowsky is within a protected class based on her gender and the inference that she was denied reappointment under circumstances which give rise to an inference of unlawful discrimination may be drawn from the fact that her position was filled by a male (*see, Ashker v International Bus. Machs. Corp.*, 168 AD2d 724, 725; *see also*, Executive Law § 296 [7]). Further, Golembiowsky's qualifications for the position as well as the Town Supervisor's testimony that, at the time of her 1988 reappointment, he felt that Golembiowsky was a good officer and all of the Town Board members had voted for her reappointment, clearly satisfied her initial burden such that petitioner was required to present evidence of a legitimate, independent and nondiscriminatory reason for its failure to reappoint her (*see, Matter of Milonas v Rosa*, 217 AD2d 825, 826, *lv denied* 87 NY2d 806; *see also, Matter of Miller Brewing Co. v State Div. of Human Rights*, 66 NY2d 937, 938).

Petitioner's evidence indicated that the reason Golembiowsky was not reappointed was because of the cumulative effect of complaints which had been lodged against her during her tenure as Constable. Since petitioner's assertion that such evidence was a legitimate, nondiscriminatory reason for not reappointing Golembiowsky has merit, the burden was therefore Golembiowsky's to show that such reasons were merely a pretext for discrimination (*see, Matter of Milonas v Rosa, supra*, at 826). The record reveals that, at the time of the 1989 reappointment meeting, O'Neill was the Chief Constable and shared the responsibility for making recommendations regarding the reappointment of Constables. Furthermore, that meeting occurred after Golembiowsky had made repeated complaints regarding O'Neill's behavior toward her both before and after she filed, and subsequently withdrew, a complaint with the Division against O'Neill for sexual harassment. No action had been taken by Town officials in response to Golembiowsky's complaints, other than telling O'Neill to stop behaving in such manner, and the Town Supervisor had notice that O'Neill did not comply with this mandate. The Town Supervisor also conducted individual meetings with Town Board members regarding whether Golembiowsky should be reappointed. Ad-

ditionally, Golembiowsky was the only female Constable, the only Constable not reappointed and her position was filled by a male when another female applicant had also applied for the position. We conclude that Golembiowsky established, by a preponderance of the evidence, that petitioner's reasons for not reappointing her were merely a pretext for discrimination (*see, supra*, at 826; *see also, Matter of Miller Brewing Co. v State Div. of Human Rights, supra*, at 939) and that a subjective retaliatory motive for termination existed (*see, Matter of Pace Univ. v New York City Commn. on Human Rights*, 85 NY2d 125, 128; *Matter of Milonas v Rosa, supra*, at 826).

In order to prevail on the charge of sexual discrimination by reason of sexual harassment which creates a hostile work environment (*see,* Executive Law § 296 [1] [a]), Golembiowsky bore the burden of showing a prima facie case of sexual harassment (*see, Fair v Guiding Eyes for Blind*, 742 F Supp 151, 154-157). Thereafter, if petitioner presented a legitimate, independent and nondiscriminatory reason for its actions, Golembiowsky also bore the burden of proving that petitioner's stated reasons were only a pretext for discrimination (*see, supra*, at 154). The elements of sexual harassment resulting in a hostile work environment, as relevant to the instant proceeding, are that (1) Golembiowsky belongs to a protected group, (2) she was the subject of unwelcome sexual harassment, (3) such harassment was based on her gender, (4) the harassment affected a term, condition or privilege of her employment, and (5) petitioner knew or should have known of the harassment and failed to take remedial action (*see, supra*, at 155). Having applied the foregoing factors to the record in this case, we conclude that a rational basis and substantial evidence exist for the determination that petitioner engaged in sexual discrimination by reason of sexual harassment which resulted in a hostile work environment.

As to damages, we find merit in petitioner's assertion that the award is not supported by sufficient evidence. It is clear that the damages award should be sustained when there is " 'some evidence of the magnitude of the injury, to assure that [it] is neither punitive nor arbitrary' " (*Matter of New York City Tr. Auth. v State Div. of Human Rights,* 181 AD2d 891, 894 [quoting *Matter of New York City Tr. Auth. v State Div. of Human Rights,* 78 NY2d 207, 217], *lv denied* 80 NY2d 762). While it is true, as the Division argues, that $150,000 is not the highest amount which has been awarded for mental suffering in discrimination cases (*see, Matter of New York City Tr. Auth. v State Div. of Human Rights, supra,* at 894), the

magnitude of Golembiowsky's mental anguish and humiliation does not warrant such a high award (*see, Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 207 AD2d 587, 587-588).

The extent of Golembiowsky's injuries, as established by her own testimony, was that as a result of this experience she was "very, very upset", "humiliated", "embarrassed to be seen in the town", she "couldn't eat", "cried", and was "very frustrated, humiliated", "a mess", and "hurt and angry". She also testified that she was depressed and in January 1989 went to a physician, who gave her a one-time prescription for tranquilizers, and that she lost seven pounds which she subsequently gained back. After not being reappointed, Golembiowsky failed to seek alternative part-time employment despite the loss of income, stating that she felt a retail cashier's job was a "step[ ] down" from the Constable position and that being seen at such a job would be embarrassing. In light of the fact that the only proof of emotional distress was Golembiowsky's own testimony, and in the absence of any proof of the severity and consequences of her condition (*cf., Matter of Carrier Corp. v New York State Div. of Human Rights*, 224 AD2d 936), we conclude that an award of $20,000 is more consistent with awards for comparable injuries (*see, Matter of Port Washington Police Dist. v State Div. of Human Rights*, 221 AD2d 639, 640; *Matter of City of Fulton v New York State Div. of Human Rights*, 221 AD2d 971, 971-972; *Matter of Laverack & Haines v New York State Div. of Human Rights*, 217 AD2d 955, 956, *lv granted* 87 NY2d 807; *Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 207 AD2d 585).

Cardona, P. J., Mercure, White and Casey, JJ., concur. Adjudged that the determination is modified, without costs, by reducing the amount awarded for emotional distress and humiliation from $150,000 to $20,000, and, as so modified, confirmed.