**Sandra Ortiz–Del VALLE, Plaintiff,**

v.

**NATIONAL BASKETBALL
ASSOCIATION,
Defendant.**

**No. 96 CIV. 2864(SHS).**

United States District Court,
S.D. New York.

March 31, 1999.

**336**

Patricia M. Flannery, Thornton, Early & Naumes, LLP, Boston, MA, for plaintiff.

Joseph Baumgarten, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant.

## OPINION and ORDER

STEIN, District Judge.

Sandra Ortiz–Del Valle brought this action alleging that the National Basketball Association ("NBA") improperly failed to hire her as an NBA referee in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; the New York State Executive Law, Human Rights Law, § 296; and the Administrative Code of the City of New York, § 8–107[1](a). At the conclusion of a six-day jury trial, the NBA was found liable for intentionally discriminating against Ms. Ortiz–Del Valle due to her gender. The jury awarded her $100,000 in damages for lost wages, $750,000 for emotional distress, and $7,000,000 in punitive damages. Defendant subsequently moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 50, or in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. That motion is denied as to liability because there was adequate evidence to support the jury's finding; as to damages, the motion is denied on the condition that plaintiff accept a remittitur of the punitive damages award to $250,000, of the award of lost wages to $76,926.20, and of the emotional distress award to $20,000.

## I. *Liability*

With respect to the jury's verdict on liability, the NBA's motion for judgment as a matter of law, or in the alternative a new trial, is denied. The burden that must be met in order to justify a court entering judgment in place and stead of the judgment dictated by a jury's verdict is a high one. In this case, there was adequate record evidence—including that enumerated below—to sustain the jury's finding of liability. There is not "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" nor is there "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]," either of which would warrant granting judgment as a matter of law to the NBA pursuant to Fed.R.Civ.P. 50(b). *Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998). Similarly, this Court is not convinced that the jury has reached a "seriously erroneous result," or that its verdict on liability is a "miscarriage of justice" that warrants a new trial. *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998) (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir.1996)).

### A. *Continuing Violation*

■ The NBA's principal argument in support of its motion concerns the application of the continuing violation doctrine to this action. The NBA contends that Ms. Ortiz–Del Valle is unable to establish a prima facie case of discriminatory failure to hire during the period required by the applicable statute of limitations, and that she cannot establish a continuing violation that would " 'extend[ ] the limitations period for all claims of discriminatory acts committed under [an ongoing policy of dis-

crimination] even if those acts, standing alone, would have been barred by the statute of limitations.'" *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997)).

A continuing violation "'may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' but not where a plaintiff has merely alleged 'discrete incidents of discrimination that are not related to discriminatory policies or mechanisms.'" *Nasr v. Daiwa Bank*, 1998 WL 142133, at *2 (S.D.N.Y. Mar.25, 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)).

Here, a reasonable jury could have found a continuous policy barring women from employment as NBA referees based on such circumstantial and direct evidence adduced at this trial such as: (1) evidence that no women were ever hired as NBA referees or invited to the NBA referee training camp until sometime in 1995;[1] (2) plaintiff's testimony that she was told that she was "more qualified than some of the men" working for the NBA or the NBA-affiliated CBA, but that Darrell Garretson, Chief of Staff of Officials, "had a problem with my being female" (Tr. at 178; *see also* Tr. at 200–02); (3) conflicting testimony on when the NBA and its scouts began "looking at" women referees (Tr. at 334, 459, 481);[2] and (4) testimony that an employment form which potential NBA referees filled out had a space to indicate the name of the applicant's wife, but not the

1. This type of inference has been referred to as the "inexorable zero." *EEOC v. National Broadcasting Co.*, 753 F.Supp. 452, 466 (S.D.N.Y.1990) (quoting *International Broth-. erhood of Teamsters v. United States*, 431 U.S. 324, 342 n. 23, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Such an inference may be weak in this case because of the scant evidence of other women who applied and were rejected. (Plaintiff did introduce evidence of the application of another woman, Karen Byers, which the jury asked to see during its deliberations. (Tr. at 1146)).

However, this lack of evidence may itself be attributable to the "inexorable zero." In another continuing violation case, Judge Robert W. Sweet wrote that he was "reluctant to narrow the continuing violation doctrine to cases wherein a single plaintiff demonstrates that similar discriminatory acts were visited on similarly situated co-workers. It is conceivable that a workplace might lack other protected class members precisely as a result of a discriminatory policy followed by defendant." *Brennan v. City of White Plains*, 1998 WL 75692, at *6 (S.D.N.Y. Feb.20, 1998). Similarly, as plaintiff has pointed out, in this case a policy barring women from employment as referees may have deterred other women from applying for the position. In this regard, plaintiff points to Violet Palmer, who testified that she never considered refereeing for the NBA before she received a call from Aaron Wade because she knew that no woman had ever been an NBA referee. (Tr. at 929).

Even if the "inexorable zero" raises only a weak inference of discrimination in this case, that inference, combined with the other evidence described above, is adequate to support a jury finding that a continuing policy by the NBA of refusing to consider women applicants existed.

2. Rod Thorn testified that the NBA "started actively looking for women referees ..." beginning in the late 1980's. (Tr. at 334). Darrell Garretson testified that there were no women he was taking a "good look" at in the years 1990–1993 (Tr. at 459).

In addition, there was conflicting testimony regarding a January 15, 1995 memo to Rod Thorn from Darell Garretson and Aaron Wade, the Manager of Referee Development and Chief Scout, on the subject of "Female Official Prospects." Wade testified that Garretson had no involvement in the writing of this memo. (Tr. at 520). Wade also testified that "I wrote it and discussed it very carefully with Darrell Garretson, because he is my immediate supervisor, and he agreed that it was a good report, and I asked him to lend his name to it." (Tr. at 753). Garretson testified that "even though it has my name on the memo itself, I got a copy of the memo probably at the same time as Mr. Thom received a copy of it. This was not a dual memo prepared by Dr. Wade and myself." (Tr. at 438–39).

name of the applicant's husband. (Tr. at 424). A reasonable jury could have found that a policy barring women was in effect through sometime in January 1995.

■ Defendant further contends that a continuing violation cannot be established because the plaintiff did not establish a prima facie case during the limitations period because (1) the only evidence of any application by plaintiff during the 300–day limitations period (from July 9, 1994, to May, 1995)[3] was an April 1995 written application, and (2) she did not establish that she was qualified for the position during that 300–day period.[4] However, the jury could have found that plaintiff had a pending application during and prior to January 1995 based on a January 15, 1995 memo from Darrell Garretson and Aaron Wade, Manager of Referee Development and Chief Scout, to Rod Thom, Senior Vice President for Basketball Operations, entitled "Female Official Prospects," which states that "conversations with [Ms. Ortiz–Del Valle] have been ongoing," (Jt.Exh. 27), and on testimony that there was no formal application process for becoming an NBA referee (Tr. at 347; see also Tr. at 427–29; 927–33; 961–64). The jury could have found that the application that was pending and evidenced in the January 15, 1995 memo was rejected pursuant to a continuing policy of discriminating against women for the position of NBA referee.[5]

■ As for the qualifications prong, the jury could have found that Ms. Ortiz–Del Valle was qualified and that the NBA's stated requirements were a pretext for discrimination. See Thornley v. Penton Publishing, Inc., 104 F.3d 26, 29 (2d Cir. 1997). Among the qualification requirements which the NBA asserts Ms. Ortiz–Del Valle did not satisfy during the limitations period were: observation and evaluation by the NBA; upgrading her officiating schedule; providing the NBA with a current officiating schedule; and physical condition. The jury could have found the observation and evaluation requirement, the current officiating schedule requirement, and the upgraded officiating schedule requirement pretextual based upon evidence including testimony that: (1) plaintiff was told to "upgrade her schedule" and get a NCAA Division I schedule, but she was unable to obtain an NCAA Division I Mens' schedule (Tr. at 125), the NBA was aware that she could not obtain an NCAA Division I Mens' schedule (Tr. at 130), and Aaron Wade never prepared an observer's report of an NCAA women's basketball game before February, 1995 (Tr. at 335 (Garretson Testimony)); (2) various male NBA referees were invited into the NBA training program with less experience than plaintiff and without an NCAA Division I Mens' schedule (Tr. at 400–418; 738–40); (3) Violet Palmer was invited to the NBA training camp without ever having been observed in person by Aaron Wade, despite her having sent in the schedule of games in which she was going to referee at his request. (Tr. at 927, 933). Similarly, the jury could have found that the NBA's assertion that plaintiff did not meet the physical condition qualification because she was overweight was pretextual, based on Dar-

---

**3.** Although the parties disagree slightly on when during early May of 1995 plaintiff filed her EEOC charge. (See, Plaintiff's Mem. at 3, Defendant's Mem. at 12, Jt. Exh. 1), the parties appear to agree that July 9, 1994, marks the beginning of the 300–day period. (Plaintiff's Mem. at 5; Defendant's Mem. at 12).

**4.** To the extent that the jury's verdict was awarded pursuant to plaintiff's state law claims, a three year statute of limitations governs. Thus, in determining whether plaintiff suffered discrimination in violation of the Hu-

man Rights Law, the jury could consider conduct as far back as April 1993, three years prior to plaintiff's filing of a complaint in this action. See Gilani v. Nat'l Assoc. of Securities Dealers, Inc., 1997 WL 473383, at * 10 (S.D.N.Y. August 19, 1997).

**5.** The NBA also contends that this Court erred in failing to instruct the jury on the continuing violation doctrine. (Defendant's Mem. at 73). However, the NBA requested no such instruction.

rell Garretson's testimony that he gave referees, including a current NBA referee, an opportunity to lose weight rather than removing them from consideration. (Tr. at 443).

In sum, plaintiff proffered sufficient evidence to establish a prima facie case during the 300 day period to establish a continuing violation.

### B. *Cabrera Charge*

█ The NBA also asserts that a new trial must be granted because of prejudicial error in the Court's instructions to the jury. Specifically, it contends that the Court erred in instructing the jury that if it found that plaintiff had satisfied the elements of a prima facie case and found that defendant's asserted reasons for failure to hire plaintiff were "not worthy of belief," they were entitled—but need not—infer that plaintiff was intentionally discriminated against on the basis of her gender. (Tr. at 1131–32). Defendant contends that this instruction does not reflect the state of the law on this issue following the en banc opinion of the Second Circuit in *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The court in *Fisher* wrote that "evidence sufficient to satisfy the scaled-down requirements of the prima facie case under McDonnell Douglas does not necessarily tell much about whether discrimination played a role in the employment decision." *Id.* at 1337. While "recogniz[ing] . . . that

in the direct case, the evidence adduced to satisfy the prima facie standard may also amount to a powerful showing of discrimination [and that] plaintiff's evidence of discrimination may also be powerfully strengthened by what the defendant puts forth in its case," the Second Circuit wrote that "[t]he fact that a plaintiff is judged to have satisfied these minimal requirements is no indication that, at the end of the case, plaintiff will have enough evidence of discrimination to support a verdict in [her] favor." *Id.*

This Court believes that these principles were implicit, to some extent, in the so-called Cabrera charge given to the jury, (*see Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir.1994)), which, by informing the jury that it was entitled—but need not—infer intentional discrimination if it found certain elements had been satisfied, had the effect of reminding the jury that the ultimate issue is whether defendant intentionally discriminated against plaintiff. By informing the jury that it need *not* infer intentional discrimination if it found the five specified elements, the Court reflected *Fisher*'s caution that the prima facie case plus a finding that the defendant's reasons were false is not *necessarily* sufficient to support a finding of intentional discrimination.[6] As *Fisher* acknowledges, the evidence adduced in support of the prima facie case and by defendant on its case "may . . . amount to a powerful showing of discrimination." *Fisher*, 114 F.3d at 1337.[7]

---

6. The jury was also instructed that

> An inference is not a suspicion, it is not a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.
> There are times when different inferences may be drawn from facts. The plaintiff asks you to draw one set of inferences, while the defendant asks you to draw another set. It is for you, and you alone, to decide what inferences you are going to draw.
> The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you as the

jury are permitted but not required to draw from the facts which have been established by evidence, whether direct or circumstantial. In drawing inferences, use your common sense.
> You are permitted to draw from the facts which you find to be proven, such reasonable inferences as would be justified in light of your own personal experience.
> (Tr. at 1119–20).

7. Furthermore, the *Fisher* court noted that "[t]o the extent that an actor in defendant's position is unlikely to have proffered a false explanation except to conceal a discriminatory motive, then the false explanation will be powerful evidence of discrimination." *Fish-*

In addition, the "Cabrera Charge" was immediately preceded by an instruction to the jury in this case that

[i]f the NBA has offered evidence tending to show a nondiscriminatory reason for the challenged action, the plaintiff, in order to prevail, must persuade you by a preponderance of the evidence that the reasons stated or articulated by the NBA are but a mere pretext for discrimination.

Miss Ortiz–Del Valle may persuade you by proving by a preponderance of the evidence that the reasons given by the defendant are not true and discrimination is the real reason that the NBA did not hire Miss Ortiz–Del Valle.

(Tr. at 1130–31). Finally, the charge at issue was immediately followed by an instruction reminding the jury that "the ultimate issue for you to determine is whether Miss Ortiz–Del Valle has proven, by a preponderance of the evidence that the NBA intentionally discriminated against her because of her gender—that Miss Ortiz Del–Valle's gender was a motivating factor in defendant's failure to hire plaintiff." (Tr. at 1132). In these circumstances, this Court cannot conclude that the instructions "as a whole ... [gave] the jury a misleading impression or inadequate understanding of the law."[8] *Carvel Corp. v. Diversified Management Group*, 930 F.2d 228, 232 (2d Cir.1991) (citing *Plagianos v. American Airlines*, 912 F.2d 57,59 (2d Cir.1990)). *See also Bick v. City of New York*, 1998 WL 190283, at *17 (S.D.N.Y. Apr.21, 1998) ("For an erroneous charge to be grounds for a new trial, the moving party must demonstrate that, even if the charge is viewed as a whole, it was prejudiced by the error.") (citing *Renz*

*v. Grey Advertising*, 135 F.3d 217, 223 (2d Cir.1997)).

In sum, there was no prejudicial error in the charge to the jury.

## II Damages

The NBA has moved for judgment as a matter of law on the grounds that Ms. Ortiz–Del Valle is not entitled to compensatory or punitive damages as a matter of law, and, in the alternative, has moved for a new trial on the grounds that the amount of damages awarded by the jury are grossly excessive.

Although the NBA has not moved in the alternative for a remittitur, this Court finds it appropriate in this case. Remittitur is the "process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir.1990) (citations omitted). "In a federal question case, a district court will ordinarily deem an award excessive if it 'shock[s] the judicial conscience.'" *Pescatore v. Pan American World Airways*, 97 F.3d 1, 18 (2d Cir.1996) (quoting *Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir.1989)). *See also Carter v. Rosenberg & Estis*, 1998 WL 150491, at *5, *19 n. 12 (S.D.N.Y. Mar.31, 1998); *Kim v. Dial Serv. Int'l, Inc.*, 1997 WL 458783, at *5 and n. 2 (S.D.N.Y. Aug.11, 1997), *aff'd*, 159 F.3d 1347 (2d Cir.1998); *but see Bick*, 1998 WL 190283, at *21. If the award "shocks the conscience," the Court "should remit the award to the maximum amount that would not be excessive." *Carter*, 1998 WL 150491, at *5 (citing *Earl*, 917 F.2d at 1330).

---

*er*, 114 F.3d at 1338. The jury could have reached such a conclusion in this case. However, this Court is mindful that the burden of proof should not be shifted to the defendant "to disprove discrimination or to offer evidence of a 'third' reason," *id.* at 1339, and notes that the jury was instructed that the burden of proof never shifts to defendant.

**8.** An examination of the jury verdict reveals the unlikelihood that the jury found defendant liable based on a weak inference of discrimination. Given the instruction regarding punitive damages and the jury award of $7,000,-000 in punitive damages, the jury must have concluded that the evidence supported not just a finding of intentional discrimination, but a finding of "wanton and reckless" intentional discrimination.

For the reasons set forth below, with respect to the award for emotional distress, this Court conditions denial of the NBA's motion for a new trial on Ms. Ortiz–Del Valle's acceptance of an award of $20,000. With respect to the award of back pay, defendant's motion is denied on condition that plaintiff accept an award of $76,926.20. With respect to the award of punitive damages, this Court denies the NBA's motion for judgment as a matter of law and conditions its denial of the NBA's motion for a new trial on Ms. Ortiz–Del Valle's acceptance of a punitive damage award of $250,000.

### A. Emotional Distress Damages

■ The NBA contends that the award of emotional distress damages "is based solely on [plaintiff's] self-serving testimony that she felt ignored and that her 'dreams and goals' were crushed," which is "clearly insufficient evidence to support a finding that she suffers or suffered from the 'concrete emotional problems' necessary to warrant an award of compensatory damages" pursuant to *Annis v. County of Westchester*, 136 F.3d 239 (2d Cir.1998). Defendant's Mem. at 81 (citing Tr. 222–23). In *Annis*, the Second Circuit affirmed a jury finding of liability for gender discrimination but vacated the entire award of compensatory and punitive damages and remanded for a new trial on damages, noting that

> the only evidence of Annis's emotional distress—her own testimony—is insufficient to warrant an award of compensatory damages for that injury. She has not alleged any physical manifestations of her emotional distress ... She testi-

fied that she needs and has had counseling, but introduced no affidavit or other evidence to corroborate her testimony ... In short, her testimony fails to establish that she suffers from any concrete emotional problems.

*Id.* at 249.

In this case, as in *Annis*, the only evidence of plaintiff's emotional distress was her own testimony. As in *Annis*, this testimony "fail[ed] to establish that [plaintiff] suffers from any concrete emotional problems." *Id.* As in *Annis*, plaintiff here offered no testimony about a single physical manifestation of her emotional damage. Unlike in *Annis*, plaintiff here did not even offer any evidence that she needed or has undergone any counseling or psychiatric treatment.[9] Therefore, pursuant to *Annis*, as a matter of law, plaintiff is not entitled to damages for her alleged emotional distress.[10]

However, plaintiff also brought her claim pursuant to the New York State Human Rights Law. If the jury rendered its award of $750,000 pursuant to plaintiff's state law claim—over which there is supplemental jurisdiction—then this Court will look to state law for guidance in determining whether the damage award is excessive. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *cf. Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437, 116 S.Ct. 2211, 2225, 135 L.Ed.2d 659 (1996); *see also Shea v. Icelandair*, 925 F.Supp. 1014, 1020 (S.D.N.Y. 1996).

■ The New York standard for determining the excessiveness of a jury's ver-

---

9. The NBA suggests that a claim for compensatory damages may not be supported solely by a plaintiff's uncorroborated testimony. It is not necessary to address that issue, given that plaintiff here has presented no evidence of any "concrete emotional problem" or any physical manifestations of any emotional problem. *See Mahoney v. Canada Dry Bottling Co.*, 1998 WL 231082, *5 (E.D.N.Y. May 7, 1998) (noting that "[t]he Court is not convinced that Annis should be read so broadly

as to preclude any award of compensatory damages for mental anguish absent corroborating testimony" but finding Annis distinguishable because, unlike in *Annis*, plaintiff testified to physical symptoms).

10. Should plaintiff elect a new trial, rather than accept the remittitur, she will be permitted to present evidence of emotional distress. *See Annis*, 136 F.3d at 249.

dict is whether it "deviates materially from what would be reasonable compensation." CPLR § 5501(c).[11] Pursuant to New York law, a plaintiff can recover damages for emotional distress based on her "own testimony, corroborated by reference to the circumstances of the alleged misconduct." *Bick,* 1998 WL 190283, at *23 (quoting *New York City Transit Auth. v. State Div. of Human Rights,* 78 N.Y.2d 207, 216, 573 N.Y.S.2d 49, 54, 577 N.E.2d 40 (1991)). "In determining whether the award is supported by the record, the courts recognize that discrimination plaintiffs 'need not produce the quantum and quality of evidence to prove compensatory damages' as they would under strict common-law principles, 'and this is particularly so where … the discriminatory act is intentionally committed.' " *Sanderson v. City of New York,* 1998 WL 187834, at * 8 (April 21, 1998) (discussing New York standard for determining excessiveness).

The amount that is reasonable for Ms. Ortiz–Del Valle to recover for emotional distress depends on the evidence adduced at trial regarding the pain she suffered, including the duration, severity and consequences of the emotional harm. *See Shea,* 925 F.Supp. at 1027. There was virtually no evidence elicited at trial regarding the emotional harm that plaintiff endured. Indeed, she points solely to two excerpts from her testimony to support an award for emotional damages: 1) that the NBA never "dignif[ied]" that she existed (Tr. 226) and 2) that she was made to feel like an "invisible person." (Tr. 225).[12] Although plaintiff is not required to corroborate her testimony regarding mental anguish in order to support a compensatory damages award under New York law, *see Marcus Garvey Nursing Home, Inc. v. New York State Div. of Human Rights,*

209 A.D.2d 619, 619–20, 619 N.Y.S.2d 106 (N.Y.A.D.1994), there was no evidence of any doctor visits or treatment, of the duration of the mental anguish, its severity or consequences that would support an award of $750,000.

Given the scant evidence elicited at trial regarding the severity, duration, and consequences of the emotional harm that Ms. Ortiz–Del Valle suffered, a remittitur is appropriate in this case. The remitted award should represent the maximum amount that would not "deviate materially" from awards in similar cases. *See Shea,* 925 F.Supp. at 1029. The case law regarding mental damage awards pursuant to the New York Human Rights Law is not very illuminating since not only have damage awards in discrimination cases spanned a broad spectrum, *see Sanderson,* 1998 WL 187834, at *8 (cataloging and comparing cases), but many of the decisions provide scant elaboration of the reasons supporting a finding of excessiveness. *See, e.g., Allender v. Mercado,* 233 A.D.2d 153, 649 N.Y.S.2d 144 (N.Y.A.D.1st Dep't 1996); *Boutique Indus., Inc. v. New York State Div. of Human Rights,* 228 A.D.2d 171, 643 N.Y.S.2d 986 (N.Y.A.D. 1st Dep't 1996); *Ebasco Serv. Inc. v. New York State Div. of Human Rights,* 234 A.D.2d 81, 651 N.Y.S.2d 299 (N.Y.A.D.1st Dep't 1996).

■ Taking into account the significant dearth of evidence at trial regarding the extent of plaintiff's emotional damages, as well as the broad array of damage awards upheld pursuant to New York law, this Court finds that the maximum plaintiff could recover pursuant to New York law is $20,000. *See Town of Lumberland v. New York State Div. of Human Rights,* 229 A.D.2d 631, 637, 644 N.Y.S.2d 864, 870 (3d Dep't 1996) (reducing award of $120,000 to

**11.** The New York standard is less deferential to the jury's verdict than the federal "shocks the conscience" standard. *See Consorti v. Armstrong World Indus.,* 72 F.3d 1003, 1011 (2nd Cir.1995), *vacated on other grounds.* 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996).

**12.** Plaintiff also testified that her reputation was damaged after she filed her discrimination suit (Tr. 234), and that her family suffered from the situation (Tr. 226).

$20,000 in sex discrimination case where plaintiff testified to being "embarrassed," "humiliated," and suffering from depression for which she was prescribed tranquilizers); *New York State Dep't of Correctional Svcs. v. State Division of Human Rights*, 215 A.D.2d 908, 909, 626 N.Y.S.2d 588, 589 (3d Dep't 1995) (reducing award of $25,000 to $15,000 where plaintiff, a victim of racial discrimination, testified to feeling "victimized, ambushed and abandoned," and to withdrawing from relationships); *City of Fulton v. New York State Div. of Human Rights*, 221 A.D.2d 971, 971, 633 N.Y.S.2d 914, 915 (4th Dep't 1995) (reducing award of $50,000 to $10,000 to plaintiff who testified about being "very upset and disappointed," losing sleep, and treating his family differently); *see also Bick*, 1998 WL 190283, at *25 (finding that in cases where "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury," the award for mental anguish ranges between $5,000 and $30,000).

Thus, defendant's motion for a new trial based on an excessive emotional damages award is denied on condition that plaintiff accept an award for emotional damages not exceeding $20,000. If she does not accept this remitted award, her action will be retried on the issue of damages only.

### B. *Back Pay*

■ Defendant contends that the award of back pay cannot stand as a matter of law because "[b]ased on the evidence introduced at trial, plaintiff suffered no lost earnings as a result of the failure of the NBA to hire her as a referee." (Defendant's Mem. at 111). Defendant offers a chart comparing what plaintiff would have earned as an NBA referee in the years 1994 through 1997, had she been hired in 1994. According to that chart, plaintiff would have earned $1,274.73 *less* as an NBA referee than she in fact earned from other sources during those years. (Defendant's Mem. at 112–13). In opposition, plaintiff offers another chart, which compares what plaintiff would have earned from 1994–97 as an NBA referee if she had been hired in 1991. This chart shows that plaintiff would have earned $76,926.20 *more* as an NBA referee from 1994–97 than she actually earned from other sources. The difference is due to seniority rights.

Plaintiff asserts that the jury was entitled to award damages based on the assumption that she should have been hired in 1991 and finds support for that proposition in *Acha v. Beame*, 570 F.2d 57 (2d Cir.1978). In *Acha*, the Second Circuit "recognized that the 'continuing violation' doctrine might in some instances justify a remedy for discrimination occurring prior to the limitations period." *Pollis v. New School*, 132 F.3d 115, 118 (2d Cir.1997). The Second Circuit in *Pollis* noted that the order of the district court in *Acha* that plaintiffs be granted "retroactive seniority" was proper where "plaintiffs could prove that a discriminatory policy which had deprived them of seniority was still in effect within the limitations period." *Pollis*, 132 F.3d at 118. In distinguishing *Acha*, the Second Circuit in *Pollis* noted that "[s]eniority rights are not of immediate value, but have determinative effect on the future terms of one's employment, such as work assignments or insulation from layoff. As a consequence, a discriminatory policy that results in a wrongful denial of seniority causes harm not so much at the moment of denial as in the future, and thus only by an award of retroactive seniority can future continuing injury be avoided." *Id.*

This Court finds that an award of back pay damages in this case is sustainable pursuant to *Acha* and *Pollis*. As in *Acha*, and unlike in *Pollis*, plaintiff has established a continuing violation. Unlike in *Pollis*, plaintiff does not contend that she is entitled to the wages she would have earned prior to the limitations period. *Pollis*, 132 F.3d at 117–119. As in *Acha*,

the seniority that plaintiff would have earned had she been hired in 1991 was "not of immediate value," but had a "determinative effect" upon the damages that plaintiff sustained during the limitations period. *Id.* at 118.

■ Nevertheless, the jury award of $100,000 in damages for lost wages must be reduced to the $76,926.20 amount Ms. Ortiz–Del Valle demonstrated she would have earned from 1994–97, had she been hired by the NBA in 1991. The jury was instructed that the amount of the verdict "must be based upon the evidence presented" and that plaintiff could recover lost wages only for the period between July 9, 1994 and March 7, 1997. Although plaintiff contends in response to this motion that the difference between the $76,926.20 figure and the award of $100,000 for back pay must be due to the jury adding in a sum for interest, there was nothing in the jury charge nor was there any evidence adduced at trial which would have allowed the jury to include interest as a part of its verdict. Because there is no support in the record for an award of back pay of $100,000, this Court concludes that the jury award must be remitted to $76,926.20.

### C. *Punitive Damages*

■ Punitive damages are not available pursuant to the New York State Human Rights Law. *See Thoreson v. Penthouse, Int'l,* 80 N.Y.2d 490, 499, 606 N.E.2d 1369, 591 N.Y.S.2d 978 (1992); *see also Ettinger v. State University,* 1998 WL 91089, at * 9 (S.D.N.Y. Mar.2, 1998). The punitive damages awarded by the jury in this case, $7,000,000, thus can only be sustained pursuant to Title VII or the New York City Administrative Code. Title VII has a $300,000 ceiling on "compensatory

damages awarded ... for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages." 42 U.S.C. § 1981a (b)(3)(D).[13] The NBA further contends that even pursuant to the operative federal standard, Ms. Ortiz–Del Valle is not entitled to any award of punitive damages as a matter of law because she has not shown that the NBA acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual" as required by 42 U.S.C. § 1981a(b)(1).

The jury was instructed that

You may only award punitive damages to plaintiff if she proves that the NBA's conduct was wanton and reckless. An act is wanton and reckless if it is done in such a manner and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the rights of others. The purpose of punitive damages is to punish a party for shocking conduct and to set an example in order to deter that party and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct.

Awarding punitive damages is within your discretion—you are not required to award them. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award plaintiff punitive damages, you must use sound reason in setting the amount and must not reflect bias, prejudice, or sympathy toward any party. But the amount can be as large as you

---

**13.** The NBA contends that the standard for awarding punitive damages pursuant to the New York City Administrative Code is more "exacting" than the Title VII standard. However, pursuant to the standards set forth in *BMW v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and *Lee v. Edwards,* 101 F.3d 805 (2d Cir.1996), this Court will condition its denial of the motion for a new trial on plaintiff's acceptance of a remittitur of the award of punitive damages to an amount less than the Title VII statutory cap; accordingly, it is unnecessary to resolve which standard is more exact or to analyze the damage award pursuant to the New York City Administrative Code.

believe necessary to fulfill the purpose of punitive damages.

(Tr. at 1135–36).

This Court cannot conclude that the jury reached a "seriously erroneous" result with respect to its decision to award punitive damages; there was sufficient evidence from which the jury could find that the NBA's conduct was wanton and reckless. While a finding of liability for intentional discrimination alone is not sufficient to sustain an award of punitive damages, there was evidence from which the jury could conclude that the NBA maintained a policy against hiring women as referees up until January of 1995. Such a finding goes beyond what is necessary to establish a case of discrimination against an individual plaintiff. In addition, the jury could have found that the NBA's conduct toward Ms. Ortiz–Del Valle was deceitful and that the NBA erected employment qualifications for Ms. Ortiz–Del Valle which it knew she could not meet (e.g., obtaining an NCAA Division I schedule) and which it did not apply to other candidates (e.g. the physical condition qualification, discussed above).

 Nevertheless, the $7,000,000 award of punitive damages is excessive pursuant to the guidelines set forth in *BMW v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and reiterated by the Second Circuit in *Lee v. Edwards,* 101 F.3d 805 (2d Cir.1996). Pursuant to *Gore* and *Lee,* the factors to be considered are: "(1) the degree of reprehensibility of the . . . conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Lee,* 101 F.3d at 809 (citing *Gore,* 116 S.Ct. at 1598–99). With respect to the second factor, the Supreme Court has noted that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore,* 116 S.Ct. at 1602.

1. *Reprehensibility.* The Supreme Court has identified "aggravating factors" that "are associated with particularly reprehensible conduct." *Lee,* 101 F.3d at 809 (quoting *Gore,* 116 S.Ct. at 1599). These factors are "(1) whether a defendant's conduct was violent or presented a threat of violence, (2) whether a defendant acted with deceit or malice as opposed to acting with mere negligence, and (3) whether a defendant has engaged in repeated instances of misconduct." *Lee,* 101 F.3d at 809 (citing *Gore* ). Although the first aggravating factor is certainly not present, as noted above, there was evidence from which the jury could have found deceitfulness and a continuing violation.

2. *Ratio.* The jury's award of $7,000,-000 in punitive damages is 58.3 times the remitted amount of compensatory damages; that ratio is high.[14]

3. *Comparison.* As in *Kim,* "[t]he final factor—the comparison with civil penalties for similar conduct—demonstrates that the award . . . is far too great." *Kim,* 1997 WL 458783, at *15. Recent comparable cases include the following:

● In *Luciano [v. Olsten Corp.],* 110 F.3d 210 (2d Cir.1997), the Second Circuit affirmed the district court's remittitur of a $5,000,002 punitive damages award to the applicable Title VII statutory cap of $300,000 where there was "ample evidence to support a finding that the Company acted with malice or reckless indifference to [plaintiff's] rights with respect to gender discrimination," including, among other evidence "testimony . . . that Olsten's Chief EEOC officer

---

14. *See Kim v. Dial Serv. Int'l,* 1997 WL 458783, at *15 (S.D.N.Y. Aug.11, 1997), *aff'd,* 159 F.3d 1347 (2d Cir.1998) (noting that it is appropriate to measure punitive damages against the "far smaller figure" for compensatory damages after remittitur).

and Human Resources Director ... called [plaintiff] a 'bitch' at an official business function; ... [and] statistical evidence of wage disparities between men and women in upper level management positions at the Company, as well as disparities in the numbers of men and women holding those positions...."

● In *Lee*, in a malicious prosecution case pursuant to 42 U.S.C. § 1983, in which the plaintiff was arrested and taken to jail for two hours, the Second Circuit remitted punitive damages of $200,000 to $75,000. *Lee*, 101 F.3d at 813.

● In *Rivera v. Baccarat*, 10 F.Supp.2d 318 (S.D.N.Y.1998), Magistrate Judge James Francis remitted a $375,000 award of punitive damages in a Title VII and ADEA termination case to $40,000, after finding that "[b]oth the overt and direct nature of the discrimination and the harshness with which it was manifested ... justify an award of punitive damages." *Id.* at 332.

● In *Mahoney v. Canada Dry Bottling*, 1998 WL 231082 (E.D.N.Y. May 7, 1998), the district court remitted a $650,-000 punitive award to $100,000 in a case where the jury found defendant liable for retaliation but not for the alleged underlying employment discrimination. With respect to the reprehensibility factor, the court noted that there was no evidence of repeated misconduct.

● In *Ettinger v. State University*, 1998 WL 91089 (S.D.N.Y. Mar.2, 1998), the district court remitted a $150,000 award of punitive damages against three individual defendants to $2,000 each, noting that "[r]eview of other cases indicates that an award of $50,000 per individual defendant greatly exceeds the amount considered necessary for deterrence." *Id.* at *12.

● In *Broome v. Biondi*, 17 F.Supp.2d 211 (S.D.N.Y.1997), the district court declined to remit a $410,000 punitive damage award to an interracial couple where the jury found that the defendant cooperative board intentionally discriminated

against plaintiffs in rejecting their application to sublet an apartment in the building. The court noted that the award of punitive damages was approximately two times the amount of compensatory damages. *Id.* at 229.

● In *Kim*, a national origin discrimination case where the plaintiff established wrongful termination, the district court remitted punitive damages from $750,-000 to $25,000.

● In *Anderson v. YARP Restaurant*, 1997 WL 27043 (S.D.N.Y. Jan.23, 1997), the district court found that $50,000 in punitive damages award was not excessive where the plaintiff was subjected to "unwanted touching" and "demands for sexual relations.... throughout the course of her six months of employment." *Id.* at *9 (quoting *Iannone*, 941 F.Supp. at 414–15).

● In *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403 (S.D.N.Y.1996), Magistrate Judge James Francis remitted a $250,000 award of punitive damages to $50,000, where the jury found the defendant liable for retaliatory discharge but not liable on a hostile work environment claim; the court noted that "[t]he defendant's conduct ... was by no means as reprehensible as that in many other gender discrimination, sex harassment, and retaliation cases ... The retaliation ... was not shown to be part of any pattern ... On the other hand, the retaliatory action ... was severe." *Id.* at 414–15.

The only case cited by plaintiff in which a punitive damage award even approaches the award here is *Greenbaum v. Svenska Handelsbanken*, 979 F.Supp. 973 (S.D.N.Y. 1997). In that case however, the primary issue was the appropriate standard of proof for punitive damages awarded pursuant to New York law. The court concluded that a preponderance standard was appropriate, and therefore assigned the $1,250,000 award of punitive damages pursuant to Title VII to the New York City Administrative Code claim. The Court did

not examine the verdict for excessiveness pursuant to *Gore* and *Lee*.

Applying these three factors set forth in *Gore* and *Lee* and limned above, this Court concludes that the maximum award of punitive damages that would not be excessive is $250,000. As noted above, because the amount arrived upon through the *Gore* and *Lee* analysis does not exceed the statutory maximum imposed by Title VII, it is unnecessary to determine whether either a higher or lower award of punitive damages would be permitted by the New York City Administrative Code.

III. *Conclusion*

Accordingly, for the reasons set forth above, the NBA's motion for judgment as a matter or law, or, in the alternative, a new trial, is hereby denied. With respect to damages, this Court's denial of defendant's motion for a new trial is conditioned upon the acceptance by plaintiff of a remittitur of the punitive damages award to $250,000, of the award of lost wages to $76,926.20, and of the emotional distress award to $20,000. Plaintiff shall elect either a remittitur or a new trial on damages in writing within 30 days of this Opinion and Order.

SO ORDERED: