Rasheed WILDS, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., Rafael Deleon a/k/a Ralph Deleon, Christopher Wheeler, "John Doe, I", ""John Doe, II", John Doe, III", "John Doe, IV", "Jane Doe, I", "Jane Doe, II", "Jane Doe, III", "Jane Doe, IV", "Jane Doe, V", and "Jane Doe, VI", the persons intended being employees and/or supervisors of United Parcel Service, Inc., but whose true names are presently unknown to plaintiff, Defendants.

Rasheed WILDS and Lamont Wilds, Plaintiffs,

v.

United Parcel Service, Inc., Ralph Deleon, and Christopher Wheeler, Defendants.

No. 01Civ.9135(WK)(HBP).

United States District Court, S.D. New York.

May 5, 2003.

Linda A. Stark, Molod Spitz DeSantis & Stark, P.C., New York, NY, for Plaintiffs.

Edward F. Maluf, Eric M. Falkenberry, Piper Rudnick, LLP, New York, NY, for Defendants.

## OPINION AND ORDER

KNAPP, Senior District Judge.

In 1999, Plaintiffs Rasheed Wilds and Lamont Wilds (collectively the "Plaintiffs") commenced an action against Defendants United Parcel Service, Inc. ("UPS"), Ralph Deleon ("Deleon"), and Christopher Wheeler ("Wheeler") (collectively the "Defendants") in New York State Supreme Court, Bronx County. Two years later, Rasheed Wilds initiated a second action against the Defendants in the same court. In October 2001, the Defendants removed both of those actions to the United States District Court for the Southern District of New York. Shortly thereafter, the Plaintiffs filed two motions whereby they moved this Court to remand those actions to the New York State Supreme Court.

We referred both motions to Magistrate Judge Pitman for a Report and Recommendation. In his ensuing Report, Judge Pitman recommended that we should remand the action commenced in 1999 to state court but that we should not remand the lawsuit brought in 2001. The Plaintiffs objected to the latter recommendation in a timely fashion. For the reasons that follow, we adopt Judge Pitman's Report and Recommendation in part and thereby remand the 1999 action to the New York State Supreme Court. However, upon a *de novo* review of the contested sections of that Report, we grant the Plaintiffs' motion to remand the 2001 action.

## BACKGROUND

### I. Factual History

#### A. Rasheed Wilds And UPS

In 1994, UPS hired Plaintiff Rasheed Wilds as a sorter. In that capacity, he reviewed packages and placed them on certain conveyor belts so that the packages could be sent to the correct trucks for delivery to particular customers. If a package came with a torn or partially detached label, he was also purportedly responsible for re-writing the label on that package.

As a sorter for UPS, Rasheed Wilds was a member of the collective bargaining unit represented by Local 804 of the International Brotherhood of Teamsters. As such, the terms and conditions of his employment with UPS were governed by a

Collective Bargaining Agreement ("CBA"). That CBA contained, among other provisions, disciplinary, grievance, and arbitration procedures.

## B. The Alleged Theft

The Defendants contend that Rasheed Wilds attempted to steal a computer monitor that was being shipped via UPS. According to the Defendants, Rasheed Wilds redirected that package from the intended recipient to his alleged brother, Plaintiff Lamont Wilds.[1] As a consequence, UPS allegedly delivered the package to a vacant apartment where Lamont Wilds signed for the package by using an alias.

The Defendants claim that, when they investigated the matter, Rasheed Wilds initially denied that he had re-labeled the package containing the computer monitor. However, after he provided a handwriting sample which matched the handwriting on the rewritten label, Rasheed Wilds purportedly admitted that he re-labeled that package. In the wake of this investigation, UPS terminated Rasheed Wilds' employment.

## C. The Apartment Search And The Ensuing Criminal Charges

The Plaintiffs allege that four UPS security guards arrived at the apartment of Rasheed Wilds' mother on October 12, 1998. These four guards allegedly searched the apartment, pointed a gun at Rasheed Wilds' brother, and frisked him. According to the Plaintiffs, the guards claimed that they were searching for a stolen computer that they believed Rasheed Wilds had re-routed to Lamont Wilds.

Thereafter, on October 13, 1998, the New York City Police Department arrested Rasheed Wilds and charged him with Petit Larceny, in violation of New York Penal Law § 155.25, and Criminal Possession of Stolen Property in the Fifth Degree, in violation of New York Penal Law § 165.40. The Plaintiffs contend that the arrest came about as a result of the Defendants' allegations.[2]

In light of the charges filed against him, Rasheed Wilds allegedly had to appear in criminal court on five occasions. Although he was offered a plea of an adjournment in contemplation of dismissal, he refused to accept the plea and continued to assert his innocence. All charges brought against him were purportedly dismissed on March 16, 1999.

## II. Procedural History

Rasheed Wilds and Lamont Wilds commenced an action against the Defendants in New York State Supreme Court, Bronx County, on September 29, 1999 (hereinafter the "1999 Action"). The state court docketed the 1999 Action under Index Number 23250/99. In their Complaint in the 1999 Action, the Plaintiffs asserted claims for: (1) defamation; (2) negligently causing a criminal complaint to be filed; (3) malicious prosecution; (4) assault and battery; (5) civil conspiracy; (6) negligent hiring and supervision; and (7) punitive damages.[3]

Two years later, on September 20, 2001, Rasheed Wilds initiated a second action

---

**1.** As Judge Pitman explained in his Report and Recommendation, there is apparently some dispute as to the relationship between Rasheed Wilds and Lamont Wilds. The Defendants contend that the two are brothers, while the Plaintiffs state that they are cousins.

**2.** UPS employed Defendant Deleon as a security supervisor and employed Defendant

Wheeler as a security manager. Deleon and Wheeler participated in the investigation into the theft of the computer monitor. They also purportedly swore out a criminal complaint against Rasheed Wilds.

**3.** In February 2001, the Plaintiffs stipulated to the withdrawal of their claims for defamation and conspiracy.

against the Defendants in New York State Supreme Court, Bronx County (hereinafter the "2001 Action"). The state court docketed the 2001 Action under Index Number 24202/01. In his Complaint in the 2001 Action, Rasheed Wilds asserted claims for: (1) "wrongful conduct, investigation, and termination;" (2) "wrongful and illegal, discriminatory, retaliatory acts and the misconduct of supervisory personnel;" and (3) failure to investigate claims made by supervisory personnel. (*See* Verified Complaint ("Complaint"), annexed as Exhibit A to the Stark Aff. in supp. of Mot. to Remand Case No. 01 Civ. 9135, ¶¶ 46, 52, 57–59.)

UPS removed the 2001 Action to this Court on October 15, 2001, by filing a removal petition. (*See* Notice of Removal, filed as Docket No. 1 in Case No. 01 Civ. 9135, at 1 (removing "the action entitled *Rasheed Wilds v. United Parcel Service, Inc., et al.,* Index No. 24202/01, to this Court").)[4] The Clerk of the Court docketed the 2001 Action as *Rasheed Wilds v. United Parcel Service, Inc., et al.,* No. 01 Civ. 9135. On October 16, 2001, the Defendants filed a second removal petition and thereby similarly removed the 1999 Action to this Court.[5] (*See* Notice of Removal, filed as Docket No. 1 in Case No. 01 Civ. 9157, at 1 (removing "the action entitled *Rasheed Wilds, et ano. v. United Parcel Service, Inc., et al.,* Index. No. 23250/99, to this Court").) The Clerk of the Court docketed that second action as *Rasheed Wilds and Lamont Wilds v. United Parcel Service, Inc., et al.,* No. 01 Civ. 9157.

---

4. Although that notice of removal states that a copy of the Summons and Verified Complaint from the 2001 Action is attached thereto as Exhibit A, the Defendants instead attached a copy of the Summons and Verified Complaint from the 1999 Action as Exhibit A.

5. Although all three Defendants joined in the removal petition when they removed the 1999 Action to this Court, Defendants Deleon and Wheeler do not appear to have joined Defendant UPS in the removal petition for the 2001 Action. (*See* Notice of Removal, filed as Docket No. 1 in Case No. 01 Civ. 9135, at 1 ("Defendant United Parcel Service, Inc. ("UPS") ... gives notice that it has removed ... the action entitled *Rasheed Wilds v. United Parcel Service, Inc., et al.,* Index No. 24202/01, to this Court....").) "The unanimous consent of all defendants in a multiparty case is normally a precondition to removal." *Metro Furniture Rental, Inc. v. Alessi* (S.D.N.Y.1991) 770 F.Supp. 198, 200; *see also Rosendale v. Citibank, N.A.* (S.D.N.Y. June 1, 1995) No. 94 Civ. 8591(DC), 1995 WL 329296, at *2 ("Generally, all defendants must join in a removal petition under 28 U.S.C. § 1441."). To date, no one has suggested to this Court that Rasheed Wilds failed to serve Deleon and Wheeler with the Summons and Verified Complaint in the 2001 Action or that such service, if any, was ineffective. *Cf. Nealy v. U.S. Healthcare*

*HMO* (S.D.N.Y.1994) 844 F.Supp. 966, 974–975 ("Although ... all defendants must join in the petition for removal, an exception holds that defendants not yet served, need not join. It would be impossible for a defendant that has not yet been effectively served to join a petition for removal.")

Deleon and Wheeler's failure to join in the relevant removal petition, however, is ultimately of little consequence. The failure of a particular defendant to join in a removal petition is a procedural defect that can be waived. *Rosendale,* 1995 WL 329296, at *2. Here, the Plaintiffs have not argued that UPS improperly removed the 2001 Action because Deleon and Wheeler did not join in the removal petition. "The requirement that all defendants join in the removal petition ... may be waived if the plaintiff fails to object." *Balogh, Osann, Kramer, Dvorak, Genova & Traub v. Chevy's International, Inc.* (S.D.N.Y. May 30, 1990) No. 89 Civ. 8193(KMW), 1990 WL 74531, at *3; *see also Programming and Systems, Inc. v. Hall Franklin & Co.* (S.D.N.Y. May 15, 1990) No. 89 Civ. 6758(KMW), 1990 WL 71435, at *2 n. 1. Since no one objected to Deleon and Wheeler's failure to join in the relevant removal petition, "any objection to the defect in [the] removal procedure is deemed waived." *Programming and Systems, Inc.,* 1990 WL 71435, at *2 n. 1.

In their removal petitions, the Defendants argued that they properly removed both lawsuits because this Court purportedly had federal question jurisdiction over those actions pursuant to 28 U.S.C. § 1331. In essence, the Defendants contend that any effort to resolve the claims in both actions will depend upon an interpretation of the CBA which governed Rasheed Wilds' employment with UPS; as such, the claims enumerated in the 1999 and 2001 Actions are supposedly preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

The Plaintiffs moved to remand both actions to New York State Supreme Court, Bronx County. They argued that the Defendants improperly removed both actions because none of the claims therein implicated the LMRA. They also argued that the Defendants improperly removed the 1999 Action because they failed to file a timely notice of removal for that lawsuit. In June 2002, we referred their two remand motions to Judge Pitman for a Report and Recommendation ("Report").

On February 19, 2003, Judge Pitman issued a Report wherein he proposed a number of recommendations. To briefly summarize, he found that the Defendants "had failed to sustain their burden of showing that the claims asserted in the 1999 Action require the interpretation of the CBA between Rasheed Wilds and UPS." (Report at 13–14.) Judge Pitman therefore recommended that we should grant the motion to remand the 1999 Action because the claims therein "assert violations of state law and do not fall under the original jurisdiction of the federal courts pursuant to the LMRA." (Report at 14.) He also recommended that we should grant the motion to remand the 1999 Action because the Defendants' "petition to remove the 1999 Action, filed over two years after the filing of the complaint, is

untimely." (Report at 17.) In addition, Judge Pitman found that "the exercise of supplemental jurisdiction" over the entire 1999 Action "would be improper." (Report at 20.) Finally, he recommended that we should deny the motion to remand the 2001 Action "because plaintiff Rasheed Wilds' claims in the 2001 Action do require the interpretation of provisions of the CBA. . . ." (Report at 15.)

The Defendants chose not to object to Judge Pitman's Report because they "accepted the Magistrate's determination." (*See* Letter from Edward F. Maluf to the Court of 03/10/03 at 1.) However, the Plaintiffs filed timely objections to the Report. (*See* Letter from Linda A. Stark to the Court of 02/28/03, filed as Docket No. 16 in Case No. 01 Civ. 9135, at 1–2 ("Objections").) They objected to the Report to the extent that Judge Pitman recommended that we should deny their motion to remand the 2001 Action. (*See id.*)

## DISCUSSION

### I. Standard Of Review

When a district court evaluates the report and recommendation of a magistrate judge, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith* (S.D.N.Y.1985) 618 F.Supp. 1186, 1189. However, "within ten days after being served with the report and recommendation, any party may object to the findings or recommendations of the magistrate judge." *United States v. Male Juvenile* (2d Cir.1997) 121 F.3d 34, 38 (citing 28 U.S.C. § 636(b)(1)); *see also Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*

(S.D.N.Y.2002) 230 F.Supp.2d 439, 445. "When an objection is raised, the court is required to conduct a *de novo* review of the contested sections." *Pizarro v. Bartlett* (S.D.N.Y.1991) 776 F.Supp. 815, 817.

In his Report, Judge Pitman recommended that we should grant the Plaintiffs' motion to remand the 1999 Action. In contrast, he recommended that we should deny the Plaintiffs' motion to remand the 2001 Action. We consider each of these recommendations seriatim.

## II. Motion To Remand The 1999 Action

■ Judge Pitman recommended that we should deny the Plaintiffs' motion to remand the 1999 Action. None of the parties objected to that recommendation. A district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." *La Torres v. Walker* (S.D.N.Y. 2000) 216 F.Supp.2d 157, 159.

■ We have reviewed the record in this case. We find that Judge Pitman's thoughtful recommendations with respect to the 1999 Action are not facially erroneous. We agree with Judge Pitman that the claims enumerated in the 1999 Action do not require the interpretation of the CBA between Rasheed Wilds and UPS; we therefore agree that the claims arise wholly under state law and are not preempted by the LMRA. (*See* Report at 10–14.) We also agree that the petition to remove the 1999 Action is untimely and that we cannot exercise supplemental jurisdiction over the entire 1999 Action. (*See* Report at 15–20.) As such, we adopt those aspects of Judge Pitman's well-reasoned Report and grant the Plaintiffs' motion to remand the 1999 Action to the New York State Supreme Court.

## III. Motion To Remand The 2001 Action

Although Judge Pitman recommended that we should grant the Plaintiffs' motion to remand the 1999 Action, he reached a contrary conclusion with respect to the 2001 Action. In his Report, Judge Pitman determined that the claims in the 2001 Action required the interpretation of the CBA which governed the terms and conditions of Rasheed Wilds' employment with UPS. (*See* Report at 14–15.) For that reason, he found that those claims were preempted by § 301 of the LMRA, that the Defendants properly removed the 2001 Action to this Court, and that the Plaintiffs' motion to remand the 2001 Action should be denied. (*See id.*)

The Plaintiffs filed specific, written objections to that recommendation in a timely fashion. (*See* Objections at 1–2.) They argue, *inter alia*, that the claims in the 2001 Action are based solely on the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107. (*See id.*) As such, they contend that "the interpretation of the [CBA] is not necessary to the resolution of this action." (Objections at 2.)

■ A district court conducts a *de novo* review of those portions of a magistrate judge's Report to which objections have been made. *La Torres*, 216 F.Supp.2d at 159. Accordingly, we now review anew whether we should grant the Plaintiffs' motion to remand the 2001 Action. *See Zervos v. Verizon New York, Inc.* (2d Cir. 2001) 252 F.3d 163, 168 ("When we review a ... decision *de novo*, we take note of it and study the reasoning on which it is based. However, our review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time.").

## A. Standard For Remand

■ "On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Hodges v. Demchuk* (S.D.N.Y.1994) 866 F.Supp. 730, 732; *see also United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.* (2d Cir.1994) 30 F.3d 298, 301 ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper."). "Unless that burden is met, the case must be remanded back to state court. At this stage therefore, the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." *Bellido–Sullivan v. American International Group, Inc.* (S.D.N.Y.2000) 123 F.Supp.2d 161, 163.

■ "The basic rules for the removal of cases from state court to federal court are well settled. An action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court." *Hernandez v. Conriv Realty Associates* (2d Cir.1997) 116 F.3d 35, 38. None of the parties before us contend that diversity jurisdiction exists. Absent diversity jurisdiction, federal question jurisdiction is required for removal. *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318; *see also Marcus v. AT&T Corp.* (2d Cir.1998) 138 F.3d 46, 52; *Bellido–Sullivan,* 123 F.Supp.2d at 163.

■ "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.,* 482 U.S. at 392, 107 S.Ct. 2425 (citation omitted).

"Under the well pleaded complaint rule, the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus,* 138 F.3d at 52; *see also Hernandez,* 116 F.3d at 38 ("[I]f a complaint alleges only state law based causes of action, it cannot be removed from state court to federal court even if there is a federal defense. 'The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.' ") (internal citations omitted).

■ Nevertheless, "a plaintiff's choice in pleading his complaint is not absolute." *Bellido–Sullivan,* 123 F.Supp.2d at 164. "One so-called exception to the well-pleaded complaint rule is the 'complete preemption' doctrine...." *Marcus,* 138 F.3d at 53. At times,

> the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. 2425 (internal citations and quotations omitted). Accordingly, the "complete preemption" doctrine

> is not really an exception to the well-pleaded complaint rule, but a corollary to it. When federal common law or statutory law so utterly dominates a preempted field that all claims brought within that field necessarily arise under federal law, a complaint purporting to raise state law claims in that field actually raises federal claims.

*Marcus,* 138 F.3d at 53. In this fashion, where a state law claim is completely preempted, "the well-pleaded complaint rule is satisfied, and removal is proper." *Id.*

The "complete preemption" doctrine is ordinarily associated with § 301 of the LMRA. *Hernandez,* 116 F.3d at 38; *see also Brown v. National Football League* (S.D.N.Y.2002) 219 F.Supp.2d 372, 378 ("Section 301 of the LMRA, 29 U.S.C. § 185(a), . . . is the statute most commonly associated with the complete preemption doctrine."). The circumstances before us fall within the ambit of that principle. The Defendants contend that the claims in the 2001 Action are completely preempted by § 301.

### B. Section 301 Of The LMRA

█ "The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. 2425. Section 301 of the LMRA provides in pertinent part that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

█ Section 301 vests federal courts with jurisdiction over controversies which involve collective bargaining agreements and authorizes those courts "to fashion 'a body of federal law for the enforcement of these collective bargaining agreements.'" *United Steelworkers of America, AFL–CIO–CLC v. Rawson* (1990) 495 U.S. 362,

368, 110 S.Ct. 1904, 109 L.Ed.2d 362 (quoting *Textile Workers Union of America v. Lincoln Mills of Alabama* (1957) 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972). The policies that animate § 301 "require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.'" *Allis–Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 210–211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (quoting *Bowen v. United States Postal Service* (1983) 459 U.S. 212, 224–225, 103 S.Ct. 588, 74 L.Ed.2d 402). An application of state law is therefore preempted by § 301 "if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410; *see also United Steelworkers of America, AFL–CIO–CLC,* 495 U.S. at 368, 110 S.Ct. 1904 ("State law is thus 'preempted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements."); *Caterpillar Inc.,* 482 U.S. at 394 (quoting *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers* (1968) 390 U.S. 557, 558, 88 S.Ct. 1235, 20 L.Ed.2d 126) ("[W]hen '[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement,' . . . that complaint arises under federal law. . . ."); *Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. 1904 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted).

Plaintiff Rasheed Wilds' employment with UPS was governed by a CBA. The

Defendants contend that they properly removed the 2001 Action because the resolution of the claims therein requires an interpretation of that CBA. However, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis–Chalmers Corp.*, 471 U.S. at 211, 105 S.Ct. 1904. "Although the Supreme Court has interpreted the preemptive scope of Section 301 broadly, the Court has repeatedly cautioned that 'it would be inconsistent with congressional intent under [section 301] to pre-empt state rules that ... establish rights and obligations, independent of a labor contract.'" *Hernandez*, 116 F.3d at 38 (quoting *Allis–Chalmers Corp.*, 471 U.S. at 212, 105 S.Ct. 1904).

The Supreme Court has "stressed that it is the legal character of a claim, as independent of rights under the collective-bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward." *Livadas v. Bradshaw* (1994) 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (internal citations and quotations omitted). "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* Preemption under § 301 of the LMRA

> merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts,

as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.

*Lingle*, 486 U.S. at 409–410, 108 S.Ct. 1877.

Hence, the critical question for the purpose of deciding when a state-law claim is preempted by § 301 of the LMRA is whether "'the resolution of a state-law claim depends on an *interpretation* of the collective-bargaining agreement....'" *Foy v. Pratt & Whitney Group* (2d Cir. 1997) 127 F.3d 229, 232 (quoting *Hawaiian Airlines, Inc. v. Norris* (1994) 512 U.S. 246, 260–262, 114 S.Ct. 2239, 129 L.Ed.2d 203); *see also Allis–Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. 1904 (Court's "analysis must focus" on whether the state-law claim "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state law] claim is inextricably intertwined with consideration of the terms of the labor contract.") "[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 *only* if such application requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413, 108 S.Ct. 1877 (emphasis added).

"Unsurprisingly, '[t]he boundary between claims requiring 'interpretation' of a CBA and those that merely require such an agreement to be 'consulted' is elusive.'" *Brown*, 219 F.Supp.2d at 379 (quoting *Wynn v. AC Rochester* (2d Cir.2001) 273 F.3d 153, 158). To determine whether the claims in the 2001 Action are preempted by § 301 of the LMRA, we must evaluate whether the resolution of those claims hinges on an interpretation of the CBA which governed Rasheed Wilds' employment relationship with UPS.

## C. The Nature Of The Claims In The 2001 Action

When the Plaintiffs moved to remand the 2001 Action back to the New York State Supreme Court, they argued that the claims in that action were predicated solely on the NYCHRL. (*See* Stark Aff. filed in support of Plaintiffs' Motion to Remand Case No. 01 Civ. 9135 ("Stark Aff.") ¶ 12 ("The action brought against the defendants involves the wrongful conduct, investigation and termination of plaintiff from his employment, in violation of New York City Charter and Administrative Code, Human Rights Law § 8–107."); Stark Aff. ¶ 13 ("The action was brought based on discrimination under New York Administrative Code § 8–107 . . . ."); Stark Aff. ¶ 15 ("In this action, plaintiff commenced his action . . . based on violation [sic] of New York Administrative Code."); Mem. of Law filed as Docket No. 10 in Case No. 01 Civ. 9135 ("Mem. of Law") at 1 ("Plaintiff brought suit . . . asserting wrongful conduct, investigation and termination of plaintiff from his employment in violation of New York City Charter and Administrative Code, Human Rights Law § 8–107."); Mem. of Law at 9 ("Plaintiff Rasheed Wilds brought his action based on discrimination for violations of New York City Charter and Administrative Code and Human Rights Law § 8–107 . . . .").) However, in his Report, Judge Pitman chose, *sub silentio*, to treat those causes of action as if they were common law wrongful termination claims. (*See* Report at 14–15.) The conclusions he arrived at thereafter can be traced directly to that decision.

■ Judge Pitman began his analysis by examining the manner in which New York law governs employment relationships. New York law provides for employment at will. *Arledge v. Stratmar Systems, Inc.* (2d Cir.1991) 948 F.2d 845, 847. "An employer has the right to terminate employment at will at any time and for any reason or for no reason, except as that right may have been limited by express agreement with the employee or in a collective bargaining agreement of which the employee is a beneficiary." *O'Connor v. Eastman Kodak Co.* (N.Y.1985) 65 N.Y.2d 724, 725, 492 N.Y.S.2d 9, 481 N.E.2d 549; *see also Gorrill v. Icelandair/Flugleidir* (2d Cir.1985) 761 F.2d 847, 851 ("New York has long held that employment for an indefinite term is terminable at the will of either party at any time, for any reason, or for no reason at all.") Hence, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.* (N.Y.1987) 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919.

■ A party may rebut the presumption of at an at-will relationship "by establishing an 'express limitation in the individual contract of employment' curtailing an employer's right to terminate at will." *Baron v. Port Authority of New York and New Jersey* (2d Cir.2001) 271 F.3d 81, 85. In other words, under New York law "there is no right against wrongful discharge unless a plaintiff explicitly pleads and establishes that an employer was limited by an express agreement." *Lugo v. Milford Management Corp.* (S.D.N.Y.1997) 956 F.Supp. 1120, 1126. A plaintiff may satisfy this burden where he can show that an employer expressly limited its right to terminate his employment at will in a collective-bargaining agreement of which he was a beneficiary. *See O'Connor,* 65 N.Y.2d at 725, 492 N.Y.S.2d 9, 481 N.E.2d 549; *see also Sheehan v. United States Postal Service* (N.D.N.Y.1997) 6 F.Supp.2d 141, 148 (plaintiff could look to collective-bargaining agreement to show that she was fired without cause); *Heaning v. Nynex–New York* (S.D.N.Y.1996) 945 F.Supp. 640, 645 (plaintiff tried to

maintain claim for wrongful discharge by drawing on the "just cause" provision of a collective-bargaining agreement).

In the context of this legal framework, Judge Pitman correctly concluded that any effort to resolve the 2001 Action would require the interpretation of the CBA *if* the claims in that lawsuit were construed as common law wrongful discharge claims. Nowhere in the 2001 Action does Rasheed Wilds contend that UPS expressly limited its right to terminate him at will. However, the CBA which governed his employment relationship with UPS delineated certain circumstances in accordance with which an employee could be terminated for cause. As such, any common law wrongful discharge claim brought by Rasheed Wilds in the 2001 Action would depend directly on his contractual rights under the CBA. *See Sheehan*, 6 F.Supp.2d at 148; *Lugo*, 956 F.Supp. at 1126. Article 13 of that CBA, which served as the equivalent of a "just cause" provision, specifically cited "proven or admitted dishonesty" as a ground for immediate termination. (*See* Stockman Aff., Ex. A, art. 13.)[6] Since UPS contends that it terminated Rasheed Wilds for reasons which fell within the scope of Article 13, an interpretation of that "just cause" provision would be necessary before UPS could be liable for common law wrongful discharge.

After Judge Pitman issued his Report, the Plaintiffs submitted objections wherein they renewed their argument regarding the nature of the 2001 Action. In their objections, they once again maintained that no effort to resolve the claims in the 2001 Action would require the interpretation of the CBA because those claims were predicated on the NYCHRL. (*See* Objections at 1–2.)

■ Without doubt, the Complaint filed by Rasheed Wilds in the 2001 Action is not a model of clarity. However, after a close examination of that Complaint, we conclude that the claims therein are premised solely on purported violations of the NYCHRL.

The first cause of action in that Complaint evinces the least ambiguous ties to the NYCHRL. Rasheed Wilds alleges that the Defendants "wrongfully accused plaintiff of a crime based upon an anonymous source, improperly 'investigated' at plaintiff's home, unreasonably detained plaintiff and wrongfully discharged plaintiff from his employment and position." (Compl.¶ 38.) He then directly contends that such "wrongful conduct, investigation and termination of the plaintiff ... was illegal and in violation of New York City Charter and Administrative Code, Human Rights Law § 8–107." (Compl.¶ 46.) Moreover, Rasheed Wilds also alleges, albeit in a rather cursory and ambiguous fashion, that he was "within the class of persons protected by New York City

---

6. In its entirety, Article 13 reads as follows:
 **Section 1**
 The following shall be causes for immediate suspension or discharge of an employee: drinking, or proven or admitted dishonesty. See Article 20, Section 1(a).
 In cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent. Such a hearing will take place within 72 hours.
 **Section 2**
 In all other cases, involving the discharge or suspension of an employee, the Company will give three (3) working days' notice to the employee of the discharge or suspension and the reason therefor. Such notice shall also be given to the Shop Steward and the Local Union office. Any warning notice or suspension shall not remain in effect more than nine (9) months except those warning notices issued pursuant to the so-called "Drinking Rule" covered by separate letter and incorporated by reference into this Agreement.
 (Stockman Aff., Ex. A, art. 13.)

Charter and Administrative Code, Human Rights Law § 8–107." (Compl.¶ 35.) Given these direct references to wrongful conduct in supposed violation of the NYCHRL, we find that the first cause of action is based on the NYCHRL rather than on the common law.

The legal bases for the second and third causes of action are less clear. In his second cause of action, Rasheed Wilds contends that UPS "is *strictly liable* for the wrongful and illegal, discriminatory, retaliatory acts and the misconduct of supervisory personnel." (Compl.¶ 52.) He further contends that UPS "did not provide remedial or disciplinary action as to its supervisory personnel," thereby "condoning" the conduct of Defendants Deleon and Wheeler. (*Id.*) As an alleged "direct consequence of defendants' unlawful, discriminatory conduct," Rasheed Wilds argues that he suffered a variety of damages. (Compl.¶ 53.) In his third cause of action, Rasheed Wilds contends that UPS "failed to investigate the acts of misconduct alleged by plaintiff against defendant DELEON and defendant WHEELER and itself" and "failed to take plaintiff's claims of innocence, hence discrimination and wrongful termination seriously." (Compl.¶¶ 57–58.) For this reason, he again argues that he suffered damages "as a direct consequence of defendants' unlawful discriminatory conduct" and that UPS "is *strictly liable* for the wrongful and illegal, discriminatory, retaliatory acts and misconduct of supervisory personnel." (Compl.¶¶ 59–60.)

The allegations in the second and third causes of action do not definitively reference the NYCHRL. As such, they could arguably be construed as claims for common law wrongful discharge. However, the second and third causes of action are not wholly untethered to the moorings of the NYCHRL. Both causes of action incorporate by reference the earlier allega-

tions enumerated in the Complaint. (*See* Compl. ¶¶ 51, 56.) As we have previously discussed, some of those earlier allegations state that the Defendants violated § 8–107 of the New York City Administrative Code. (*See, e.g.* Compl. ¶¶ 35, 46.) Moreover, the second and third causes of action allege discriminatory and retaliatory conduct. Section 8–107 specifically prohibits certain categories of discrimination and retaliation. *See* N.Y.C. Admin. Code §§ 8–107(1)(a), 8–107(7). In light of such considerations, the second and third causes of action could also arguably be read as if they were predicated on violations of the NYCHRL.

■ "The defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand." 16 James Wm. Moore et al., Moore's Federal Practice § 107.05 (3d ed.2003) (internal cross-reference omitted); *see also Somlyo v. J. Lu–Rob Enterprises, Inc.* (2d Cir.1991) 932 F.2d 1043, 1046 ("[C]ourts construe the removal statute narrowly, resolving any doubts against removability."); *Payne v. Overhead Door Corp.* (S.D.N.Y.2001) 172 F.Supp.2d 475, 477 ("Any doubts as to removability should be resolved in favor of remand."). In this case, the ambiguous allegations in the second and third causes of action raise serious doubts regarding the legal bases for those causes of action because the allegations can be read in any number of ways; those claims could be construed as if they were premised on the common law, the NYCHRL, or perhaps even both of those sources. For the reasons already enumerated *supra*, those claims would be removable in accordance with federal question jurisdiction if they were construed as common law wrongful discharge claims because they would be completely preempted by § 301 of the LMRA. We assume, only for the moment,

that those claims would not similarly be preempted by the LMRA if they were based on the NYCHRL. To the extent that we have doubts as to whether the second and third causes of action enumerate removable common law wrongful discharge claims or unremovable NYCHRL claims, we must resolve those doubts in favor of remand and thereby construe the relevant causes of action as NYCHRL claims.

One other factor also persuades us to construe the first, second, and third causes of action as if they were predicated solely on the NYCHRL. "It has been the law for decades that 'the party who brings a suit is master to decide what law he will rely upon....'" *Travelers Indemnity Co. v. Sarkisian* (2d Cir.) 794 F.2d 754, 758, *cert. denied* (1986) 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (quoting *The Fair v. Kohler Die & Specialty Co.* (1913) 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716); *see also Marcus*, 138 F.3d at 52 ("the plaintiff is the master of the complaint"). Here, Rasheed Wilds has unambiguously and consistently conceded that the 2001 Action is predicated solely on the NYCHRL. (*See* Objections at 1 ("The resolution of the wrongful termination claim brought by the plaintiff is not premised upon [the CBA], as he is not alleging that the agreement was violated, but is alleging that he was discriminated against under New York Administrative Code § 8–107."); Stark Aff. ¶ 12 ("The action brought against the defendants involves the wrongful conduct, investigation and termination of plaintiff from his employment, in violation of New York City Charter and Administrative Code, Human Rights Law § 8–107."); Stark Aff. ¶ 13 ("The action was brought based on discrimination under New York Administrative Code § 8–107...."); Stark Aff. ¶ 15 ("In this action, plaintiff commenced his action ... based on violation [sic] of New York Administrative Code."); Mem. of Law at 1 ("Plaintiff brought suit ... asserting wrongful conduct, investigation and termination of plaintiff from his employment in violation of New York City Charter and Administrative Code, Human Rights Law § 8–107."); Mem. of Law at 9 ("Plaintiff Rasheed Wilds brought his action based on discrimination for violations of New York City Charter and Administrative Code and Human Rights Law § 8–107....").) We see no reason why a plaintiff should be forced to raise common law wrongful discharge claims in a lawsuit where he voluntarily and openly concedes that those claims are not included in his action. Given Plaintiff Rasheed Wilds' willingness to limit the legal bases for his causes of action, we find that the claims in the 2001 Action are predicated solely on the NYCHRL.

The Defendants argue that any construction of the 2001 Action as a lawsuit brought wholly under the auspices of the NYCHRL should be given short shrift because the allegations therein fail to state a claim under that municipal provision. However, the Defendants cite to no case law in support of the stunning proposition that the purported deficiencies of an underlying claim should weigh against the remand of a lawsuit to state court. In fact, the law is to the contrary. When a district court evaluates a motion to remand, the court "does not reach the merits of the underlying dispute but instead decides only the question of whether removal to the federal court was proper." *City of Jackson, Mississippi v. Lakeland Lounge of Jackson, Inc.* (S.D.Miss.1993) 147 F.R.D. 122, 124; *see also In re Pfohl Bros. Landfill Litig.* (W.D.N.Y.1999) 67 F.Supp.2d 177, 179 n. 1 ("[A] matter of remand ... presents only the question of whether there is a proper basis for federal jurisdiction to support removal and neither reaches nor requires a determination on

the merits of a plaintiff's claims or a defendants [sic] defenses or counterclaims."); *Holt v. Tonawanda Coke Corp.* (W.D.N.Y. 1991) 802 F.Supp. 866, 868 ("A motion to remand ... decides only the question of whether there is a proper basis for federal jurisdiction to support removal, and neither reaches nor determines the merits of a plaintiff's claims or a defendant's defenses or counterclaims.")

The motion before us is not a motion to dismiss the claims in the 2001 Action. To resolve the motion to remand, we need not pass judgment on the merits of the claims in the 2001 Action. Perhaps Rasheed Wilds, by choosing to clothe his claims solely in the garb of the NYCHRL, will prove unable to prevail on the merits of those claims if the Defendants press for their dismissal. We need not decide that question today. We must only determine whether the claims in the 2001 Action, when construed as if they were predicated on the NYCHRL, are preempted by § 301 of the LMRA.

### D. The New York City Human Rights Law And LMRA Preemption

We now turn to the remaining question presented by the instant motion: are Plaintiff Rasheed Wilds' NYCHRL claims preempted by § 301 of the LMRA? Section 301 will preempt a state law claim only where the resolution of that claim depends on an interpretation of a collective-bargaining agreement. *Lingle,* 486 U.S. at 413, 108 S.Ct. 1877; *Foy,* 127 F.3d at 232. As such, we must decide whether or not the resolution of the 2001 Action hinges on an interpretation of the CBA

which governed Rasheed Wilds' employment with UPS.

█ "The New York City Human Rights Law ... protects certain groups from policies or practices that discriminate against them in areas such as employment, public accommodation and housing." *Levin v. Yeshiva University* (N.Y.2001) 96 N.Y.2d 484, 489, 730 N.Y.S.2d 15, 754 N.E.2d 1099. To be specific, the NYCHRL prohibits an employer from discriminating against any person on the basis of age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, alienage, or citizenship status. N.Y.C. Admin. Code § 8–107(1)(a); [7] *see also Budzanoski v. Pfizer, Inc.* (N.Y.Sup.Ct. Dec. 17, 1996) No. 111847/93, 1996 WL 808066, at *9. In order to establish a prima face case of discrimination in violation of the NYCHRL, "a plaintiff must show that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties of his position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Viruet v. Citizen Advice Bureau* (S.D.N.Y. Aug. 15, 2002) No. 01 Civ. 4595(AJP), 2002 WL 1880731, at *18; *see also Milonas v. Rosa* (N.Y.App.Div.1995) 217 A.D.2d 825, 629 N.Y.S.2d 535, 536 ("In order to prevail ... a complainant must show that he or she is a member of a protected class, who was qualified for the position and was discharged from said position under circum-

---

**7.** Section 8–107(1) provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, martial status, sexual orientation or alienage or citizenship status of

any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a).

stances giving rise to an inference of unlawful discrimination.").

Once a plaintiff claiming discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination which arises therefrom by articulating a legitimate, non-discriminatory reason for its employment decision. *See Brennan v. Metropolitan Opera Association, Inc.* (N.Y.App.Div. 2001) 284 A.D.2d 66, 729 N.Y.S.2d 77, 82; *Western Union International, Inc. v. City of New York, Commission on Human Rights* (N.Y.Sup.Ct.1985) 128 Misc.2d 217, 489 N.Y.S.2d 665, 667, *aff'd* (N.Y.App.Div. 1986) 120 A.D.2d 996, 502 N.Y.S.2d 568. If this is done, the plaintiff, upon whom the burden of proof remains at all times, must show by a preponderance of the evidence that the reason articulated by the defendant is merely a pretext. *See Milonas,* 629 N.Y.S.2d at 536; *see also Brennan,* 729 N.Y.S.2d at 82; *Western Union International, Inc.,* 489 N.Y.S.2d at 667.

 The NYCHRL also prohibits an employer from retaliating against an employee for complaining about discrimination in the workplace or otherwise availing himself of the protections afforded by that city ordinance. *Nacinovich v. Tullett & Tokoyo Forex, Inc.* (N.Y.Sup.Ct. May, 18, 1998) No. 017778/96, 1998 WL 1050971, at *6 (citing N.Y.C. Admin. Code § 8–107(7)); *Budzanoski,* 1996 WL 808066, at *9 (citing N.Y.C. Admin. Code § 8–107(7)); *see also Schibrat v. New York State Housing Finance Agency* (S.D.N.Y. Mar. 13, 1998) No. 96 Civ.2004(JFK), 1998

WL 118171, at *4 (N.Y.CHRL prohibits retaliation against an employee who opposes a practice forbidden by that ordinance or files a complaint of discrimination).[8] "To establish a prima facie case of retaliation, an employee must show that (1) he was engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer thereafter took some adverse employment action against him; and (4) a causal connection between his participation in the protected activity and the adverse employment action." *Nacinovich,* 1998 WL 1050971, at *6; *see also Budzanoski,* 1996 WL 808066, at *9. Once a plaintiff establishes a prima facie case,

> it, in effect, 'creates a presumption that the employer unlawfully discriminated against the employee.' In order to defeat this presumption, it becomes incumbent upon the defendant to set forth a legitimate, non-discriminatory reason for its employment decision. If defendant meet this requirement the presumption of discrimination in plaintiff's favor is negated and the plaintiff resumes its burden ... of proving by a preponderance of the credible evidence that the reasons set forth by the defendant were a pretext. The 'ultimate question to be decided is whether plaintiff has proven that the defendant intentionally [ ] retaliated against [him] because ... [he] engaged in a protected activity.'

*Nacinovich,* 1998 WL 1050971, at *7 (internal citations and quotations omitted).

 The Defendants do not suggest that Rasheed Wilds' ability to establish a

---

**8.** Section 8–107(7) of the New York City Administrative Code provides as follows: " "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) com-

menced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8–115 of this chapter." N.Y.C. Admin. Code § 8–107(7).

prima facie case of discrimination or retaliation under the NYCHRL hinges on an interpretation of the CBA. *Cf. Stuart v. Adelphi University* (S.D.N.Y. Oct. 28, 1994) No. 94 Civ. 4698(LMM), 1994 WL 593766, at *1 ("No interpretation of the collective bargaining agreement is required to establish a prima facie case for . . . a violation of [the] state Human Rights Law."). Rather, the Defendants contend that a court will need to interpret the CBA because of the justification *they* advance for Rasheed Wilds' termination. According to the Defendants, a court will need to look to the CBA because UPS terminated Rasheed Wilds for a reason which purportedly fell within the scope of permissible terminations delineated in Article 13 of the CBA. In a similar vein, they also suggest that a court will need to interpret the CBA to determine whether the termination of Rasheed Wilds pursuant to Article 13 somehow violated Article 49 of the CBA; the latter provision prohibits UPS from "intimidat[ing], harass[ing], coerc[ing] or overly supervis[ing]" its employees. (Stockman Aff., Ex. A, art. 49 .) [9]

The Defendants' argument is similar to the one that the Court of Appeals for the Second Circuit rejected in *Baldracchi v. Pratt & Whitney Aircraft Division, United Technologies Corp.* (2d Cir.1987) 814 F.2d 102, 105, *cert. denied* (1988) 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 920. In that case, the plaintiff claimed that the defendant had wrongfully discharged her in violation of a Connecticut statute for filing a workers' compensation claim. *Id.* at 103. Since the plaintiff had been employed by the defendant pursuant to the terms of a collective-bargaining agreement, the defendant removed the action to federal court on the theory that the wrongful discharge lawsuit was preempted by § 301 of the LMRA. *See id.* at 103–104. The plaintiff moved to remand the case to state court but the district court denied her motion. *Id.* at 104. The Second Circuit reversed.

The Second Circuit explained that, under the relevant Connecticut statute, the plaintiff would need to present a prima facie case that she was in fact fired for filing a workers' compensation claim. *Id.* at 105. The defendant would then have to demonstrate that the plaintiff was fired for another, non-pretextual reason. *Id.* The defendant argued "that determining whether its proffered reason for firing Baldracci was 'legitimate,' i.e. for 'just cause' under the labor agreement, would require interpretation of that agreement." *Id.* As a consequence, according to the defendant, "reference to the labor contract" would be "necessary" once the plaintiff made out a prima facie case. *Id.* The Second Circuit disagreed. The court held that the defendant "would have to satisfy the trier of fact in the state court only that it fired Baldracchi for a reason unrelated to her filing a workers' compensation claim. Though it would have to show that the reason was more than pretext, it would not have to establish that the grounds for Baldracchi's termination amounted to 'just cause' under the collective bargaining agreement." *Id.*

Perhaps UPS did terminate Rasheed Wilds for a reason which properly fell within the scope of Article 13 of the CBA. Any effort to resolve the claims in the 2001 Action, however, will not hinge on that question. The claims therein are predicated on alleged discriminatory and retaliato-

---

**9.** Section 1 of Article 49 of the CBA provides, in pertinent part, that: "The Employer shall not in any way intimidate, harass, coerce, or overly supervise any employee in the performance of his or her duties. The Employer will treat employees with dignity and respect at all times, which shall include, but not be limited to, giving due consideration to the age and physical condition of the employee. Employees will also treat each other as well as the employer with dignity and respect." (Stockman Aff., Ex. A, art. 49.)

ry conduct which supposedly violated the NYCHRL. Accordingly, the Defendants, like the defendant in *Baldracchi,* will not need to establish that the grounds for Wilds' termination amounted to "just cause" under the CBA. *See Baldracchi,* 814 F.2d at 105. *Cf. Lingle,* 486 U.S. at 407, 108 S.Ct. 1877 (retaliatory discharge claim was not preempted by § 301 because the relevant inquiry did not turn on the meaning of the collective-bargaining agreement but rather focused on whether the employer had a non-retaliatory reason for the discharge). In other words, the Defendants will not need to demonstrate that UPS terminated Rasheed Wilds pursuant to a permissible cause specifically enumerated in Article 13 of the CBA. To the contrary, if Wilds establishes a prima facie case of discrimination or retaliation, the Defendants would be able to rebut the presumption of discrimination that would arise therefrom by articulating nothing more than a legitimate, non-discriminatory reason for the employment decision. *See Brennan,* 729 N.Y.S.2d at 82; *Nacinovich,* 1998 WL 1050971, at *7. As a consequence, no one will need to interpret Article 13 to determine whether or not the Defendants acted within the scope of Article 13 of the CBA or whether their actions pursuant to Article 13 somehow violated Article 49 of the CBA. *Cf. Lingle,* 486 U.S. at 413, 108 S.Ct. 1877 ("In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement.").

Although some of the underlying facts which are relevant to the resolution of Rasheed Wilds' NYCHRL claims may also be relevant to the resolution of whether he was terminated for "proven or admitted dishonesty" within the meaning of Article 13 of the CBA, that does not mean this "just cause" provision of the CBA affects his NYCHRL claims.[10] *See Carvalho v. International Bridge & Iron Co.* (D.Conn. Feb. 25, 2000) No. 3:99CV605 (CFD), 2000 WL 306456, at *4; *Lugo,* 956 F.Supp. at 1127 n. 5; *see also Lingle,* 486 U.S. at 409–410, 108 S.Ct. 1877 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

The foregoing conclusions comport with the manner in which courts within the Second Circuit have approached the preemption of claims arising under the NYCHRL's state statutory counterpart, the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296. The NYHRL resembles the NYCHRL in that the statute similarly prohibits discrimination on the basis of age, race, creed, color, national origin, sexual orientation, sex, disability, and marital status.[11] N.Y. Exec.

---

**10.** Moreover, Rasheed Wilds does not allege that the Defendants' conduct violated Article 49 of the CBA. Rather, he asserts that the Defendants violated their independent, non-negotiable obligation not to discriminate or retaliate against him in violation of the NYCHRL. Even if we were to assume, for the sake of argument, that the same conduct which violates the NYCHRL could simultaneously be construed as a violation of the contractual rights of an employee, if any, enumerated in Article 49, that consideration, without more, would not lead to the conclu-sion that § 301 of the LMRA preempts the NYCHRL claim. "[T]he mere fact that a broad contractual protection against discriminatory or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Lingle,* 486 U.S. at 412–413, 108 S.Ct. 1877.

**11.** The NYHRL also prohibits discrimination on the basis of "genetic predisposition or carrier status." N.Y. Exec. Law § 296(1)(a).

Law § 296(1)(a). The NYHRL also similarly prohibits retaliation. *See* N.Y. Exec. Law § 296(7); *see also Schibrat,* 1998 WL 118171, at *4. As a general matter, both the state statute and the city ordinance are governed by the same legal standards and share the same goal. *Abdu–Brisson v. Delta Air Lines, Inc.* (S.D.N.Y. Feb. 9, 1999) No. 94 Civ. 8494(HB), 1999 WL 64436, at *3 (citing *Tyler v. Bethlehem Steel Corp.* (2d Cir.) 958 F.2d 1176, 1180, *cert. denied* (1992) 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46). Indeed, there is in large measure "no difference between the rights granted under the NYCHRL and the rights granted under the NYHRL and no difference in the manner or amount of proof required." *Pace v. Paris Maintenance Co.* (S.D.N.Y.2000) 107 F.Supp.2d 251, 266, *aff'd* (2d Cir.2001) 7 Fed.Appx. 94 (internal citations and quotations omitted); *see also Mohamed v. Marriott International, Inc.* (S.D.N.Y.1995) 905 F.Supp. 141, 157. In essence, the "wording of the city ordinance and the manner in which it has been applied show a clear intent to parallel the obligations and the remedies provided by" the NYHRL. *Mohamed,* 905 F.Supp. at 157; *see also Ettinger v. State University of New York State College of Optometry* (S.D.N.Y. Mar. 2, 1998) No. 95 Civ. 9893(RWS), 1998 WL 91089, at *10.

District courts within the Second Circuit have repeatedly come to the conclusion that NYHRL claims are not preempted by § 301 of the LMRA. *See Curtis v. Airborne Freight Corp.* (S.D.N.Y. Dec. 17, 1998) No. 98 Civ. 4062(SAS), 1998 WL 883297, at *6 n. 5; *Lugo,* 956 F.Supp. at 1127 n. 5; *Gonzalez v. Dynair Service Co., Inc.* (E.D.N.Y.1990) 728 F.Supp. 100, 102;

*International Association of Machinists and Aerospace Workers, Local Lodge No. 967 v. General Electric Co.* (N.D.N.Y.1989) 713 F.Supp. 547, 554–555. *Cf. Abdu–Brisson,* 1999 WL 64436, at *3 (the Railway Labor Act does not preempt a discrimination claim under the NYHRL *or* the NYCHRL).[12]

Those courts arrived at that conclusion because they found that an inquiry into whether the elements of an NYHRL discrimination claim or the defenses thereto had been satisfied would not require any interpretation of a contractual term in a collective-bargaining agreement. *See Abdu–Brisson,* 1999 WL 64436, at *3 ("A claim based on a substantive protection against ... discrimination that focuses on the issue of an employer's discriminatory animus does not necessitate an interpretation of the CBA such that preemption is required."); *Curtis,* 1998 WL 883297, at *6 n. 5 ("The trier of fact here will need to engage in a factual inquiry to determine whether defendant engaged in· disparate discipline for Caucasians and non-Caucasians, not whether defendant complied with the disciplinary requirements of the collective-bargaining agreement."); *Lugo,* 956 F.Supp. at 1127 n. 5 ("Plaintiff's Human Rights Law claim also survives defendant's motion to dismiss pursuant to the pre-emption doctrine of the LMRA because neither of the elements of the state law claim require the court to interpret any term of the CBA."); *Gonzalez,* 728 F.Supp. at 102 (internal citation omitted) ("To establish liability under [the NYHRL], plaintiff would have to prove that he was discharged or not reinstated

---

12. The preemption standard which applies under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq,* converges with the standard which applies under the LMRA. *Hawaiian Airlines, Inc.,* 512 U.S. at 263, 114 S.Ct. 2239. As a result, the Supreme Court has applied the LMRA preemption standard articulated in *Lingle* to resolve questions of RLA preemption. *Id.* The relevant issue with respect to preemption under either statute is whether "the resolution of a state-law claim depends on an interpretation of the CBA." *Id.* (citing *Lingle,* 486 U.S. at 405–406, 108 S.Ct. 1877).

because of his arrest, and that there was no bona fide business reasons for the employer's conduct. The elements of his claim do not require an interpretation of the collective bargaining agreement."); *International Association of Machinists and Aerospace Workers, Local Lodge No. 967,* 713 F.Supp. at 554 ("[T]he thrust of the causes of action in the complaint have to do with ... discrimination rather than the breach of a duty which stems from the provisions of a collective bargaining agreement."). *Cf. Lingle,* 486 U.S. at 407, 108 S.Ct. 1877 (where elements of retaliatory

discharge claim focused on an inquiry into the "motivation of the employer" and its "nonretaliatory reason for the discharge," a court would not need to interpret any term of a collective-bargaining agreement). In light of the significant similarities between the NYHRL and the NYCHRL, we find this rationale to be persuasive. This rationale further supports the conclusion that Rasheed Wilds' NYCHRL claims are not preempted by § 301 of the LMRA.[13]

To summarize, we hold, after a *de novo* review of the contested sections of the

**13.** The cases which the Defendants cite in support of their argument that the claims in the 2001 Action hinge on an interpretation of the CBA do not compel a contrary conclusion. Those cases held that New York common law actions premised on a contract were preempted by § 301 of the LMRA because they required the interpretation of a collective-bargaining agreement. *See Monumental Builders, Inc. v. CBS Corp.* (S.D.N.Y. June 15, 2000) No. 00 Civ. 220(DLC), 2000 WL 777893, at *1–*3 (claim for breach of an employment contract preempted by § 301); *Wilhelm v. Sunrise Northeast, Inc.* (D.Conn. 1995) 923 F.Supp. 330, 334–336 (claim for, *inter alia,* breach of employment contract preempted by § 301); *Miree v. Singer* (S.D.N.Y. Aug. 5, 1991) No. 91 Civ. 3259(MBM), 1991 WL 156323, at *1 (claims for, *inter alia,* wrongful discharge and tortious interference with contractual relations preempted by § 301); *Amendolare v. Schenkers International Forwarders, Inc.* (E.D.N.Y. 1990) 747 F.Supp. 162, 172 (claims for, *inter alia,* breach of contract and tortious interference with contract preempted by § 301); *Dragone v. M.J. Raynes, Inc.* (S.D.N.Y.1988) 695 F.Supp. 720, 723–724 (claims for wrongful discharge and tortious interference with contract preempted by § 301). *Cf. Seaver v. Yellow Freight System, Inc.* (W.D.N.Y. Aug. 22, 1996) No. 96–CV–105A(H), 1996 WL 622639, at *4–*5 (claim for intentional infliction of emotional distress preempted by § 301 where determination of whether conduct was "outrageous" or "extreme" depended upon whether defendants' conduct was prohibited by the "just cause" provision of the CBA). The same is true of the cases cited by the Report. *See Allocco v. Dow Jones & Co., Inc.* (S.D.N.Y. June 27, 2002) No. 02 Civ.

1029(LMM), 2002 WL 1402084, at *4 (breach of contract claims for wrongful termination preempted by § 301); *Duran v. Jamaica Hospital* (E.D.N.Y.2002) 216 F. Supp.2d 63, 69–70 (common law wrongful termination claim preempted by § 301); *Sheehan,* 6 F.Supp.2d at 148 (claim for wrongful discharge preempted by § 301); *Lugo,* 956 F.Supp. at 1126 (claim for wrongful discharge preempted by § 301).

We do not disagree with these decisions. Where an employee can establish that the employer made him aware of an express written policy limiting its right of discharge and that he detrimentally relied on that policy in accepting the employment, the employee has, in effect, a breach of contract claim against the employer if he is thereafter wrongfully discharged. *See De Petris v. Union Settlement Association, Inc.* (N.Y.1995) 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269; *see also Allocco,* 2002 WL 1402084, at *4; *Weiner v. McGraw-Hill, Inc.* (N.Y.1982) 57 N.Y.2d 458, 462–467, 457 N.Y.S.2d 193, 443 N.E.2d 441; *Porras v. Montefiore Medical Center* (1992) 185 A.D.2d 784, 588 N.Y.S.2d 135. Section 301 would therefore preempt the claims in the 2001 Action if they were New York common law wrongful discharge claims; any resolution of such contractual claims would require an interpretation of the "just cause" provision in the CBA (i.e. Article 13). However, the foregoing decisions offer no support for the proposition that § 301 preempts NYCHRL claims for discrimination and retaliation. If anything, one of the cases cited by the Report supports a contrary conclusion. *See Lugo,* 956 F.Supp. at 1127 n. 5 (N.Y.HRL claim not preempted by § 301).

Report, that the 2001 Action must be remanded to the New York State Supreme Court. We arrive at this determination for two reasons. First, we find that the claims in the 2001 Action are predicated upon the NYCHRL. Second, we conclude that these NYCHRL claims are not completely preempted by § 301 of the LMRA because no interpretation of the CBA is necessary for their resolution. As such, we grant the Plaintiffs' motion to remand the 2001 Action to the New York State Supreme Court.

## IV. Attorneys' Fees

The Plaintiffs also seek to recover the attorneys' fees which they incurred through their resistance to the removal of the 1999 and 2001 Actions. Under 28 U.S.C. § 1447(c), a district court may award attorneys' fees when it remands a case to state court. *Circle Industries USA, Inc. v. Parke Construction Group, Inc.* (2d Cir.) 183 F.3d 105, 108, *cert. denied* (1999) 528 U.S. 1062, 120 S.Ct. 616, 145 L.Ed.2d 510. Section 1447(c) provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

The simplicity of the removal procedure, which allows a defendant, acting *ex parte*, to remove a case to federal court by merely filing a signed notice of removal, facilitates removal. *Circle Industries USA, Inc.*, 183 F.3d at 109. However, that same procedural simplicity "also exposes a plaintiff to the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly, thereby requiring plaintiff to appear in federal court, prepare motion papers and litigate, merely to get the action returned to the court where the plaintiff initiated it." *Id.; see also Nemazee v. Premier, Inc.* (S.D.N.Y.2002) 232 F.Supp.2d 172, 181. By allowing a plaintiff to recover attorneys' fees when a court

grants a motion to remand, § 1447(c) serves the purpose of deterring improper removal. *Circle Industries USA, Inc.*, 183 F.3d at 109. Nonetheless, this provision "leaves the decision to award such [fees] to the Court's discretion, and courts frequently decline to do so." *United Mutual Houses, L.P. v. Andujar* (S.D.N.Y.2002) 230 F.Supp.2d 349, 354; *see also Bellido–Sullivan*, 123 F.Supp.2d at 169 ("The award of costs and fees in such a matter is left to the discretion of the district court.").

"[B]ad faith removal, although often considered, is not required in order to award costs and attorney fees." *Frontier Ins. Co. v. MTN Owner Trust* (S.D.N.Y. 2000) 111 F.Supp.2d 376, 381. Rather, "[w]e must apply a test of 'overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties.'" *Id.* (quoting *Morgan Guaranty Trust Co. of New York v. Republic of Palau* (2d Cir.1992) 971 F.2d 917, 923–924); *see also United Mutual Houses, L.P.*, 230 F.Supp.2d at 355. In this case, the litigation focused on the subtleties surrounding the "complete preemption" doctrine; the Second Circuit has conceded that "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied." *Foy*, 127 F.3d at 233. As we acknowledged earlier, " '[t]he boundary between claims requiring 'interpretation' of a CBA and those that merely require such an agreement to be 'consulted' is elusive.' " *Brown*, 219 F.Supp.2d at 379 (quoting *Wynn*, 273 F.3d at 158); *see also Bellido–Sullivan*, 123 F.Supp.2d at 169 ("The court appreciates that removal under the artful pleading doctrine is a complicated and somewhat murky issue."). The circumstances here are further exacerbated by the fact that the complaints in both the 1999 and the 2001 Actions are not models of clarity; as such, the full scope of the bases for the claims enumerated in those

actions were not necessarily readily apparent from the face of those complaints. Taking into account the nature of the litigation between the parties and the surrounding circumstances, we find that the imposition of fees in this instance would be inappropriate. We therefore deny the Plaintiffs' request for attorneys' fees.

See also 257 F.Supp.2d 737.

### CONCLUSION

For the foregoing reasons, we ADOPT Judge Pitman's Report to the extent that the report recommends that we should grant the Plaintiffs' motion to remand the 1999 Action. Accordingly, we hereby RE-MAND the 1999 Action, *Rasheed Wilds and Lamont Wilds v. United Parcel Service, Inc., et al.,* No. 01 Civ. 9157, to New York State Supreme Court, Bronx County.

For the foregoing reasons, we also GRANT the Plaintiffs' motion to remand the 2001 Action. We hereby REMAND the 2001 Action, *Rasheed Wilds v. United Parcel Service, Inc., et al.,* No. 01 Civ. 9135, to New York State Supreme Court, Bronx County.

**SO ORDERED.**